STEVENS *and* WOODS *against* THE STATE.

ON CERTIORARI *to Pulaski County Court.*

All property in this State must, by the Constitution, be taxed according to its value ; and the tax thereon must be equal and uniform throughout the State.

The Legislature has no power to discriminate, and fix upon one description or species of property a greater tax than that fixed by law upon every other description or species of property of equal value, subjected to taxation.

Every individual may lawfully acquire and possess any species or description of property, if he does not thereby destroy or deprive some other person of his property, or some enjoyment thereof, in which he is protected by law.

But property, when acquired and possessed, must be so kept and disposed of as not to injure any paramount legal right of another, or affect injuriously the public morals, or public good, so far as they are protected by law.

The Legislature cannot restrict any one from making or purchasing a billiard table ; but may, by law, so regulate or restrict the use of it, as to prevent any injury therefrom to the public morals or public good.

No individual in this government does, or can, have or possess any privilege which is not common to every other citizen of the State, until it is created by law, and acquired by him under authority thereof, and in the manner therein designated.

The Legislature can tax no privileges, except those created by law, and legally existing at such time as the law imposing the tax directs it to be levied thereon.

The Legislature cannot, by prohibiting the exercise of a right common to every citizen, and then allowing its exercise upon payment of a tax, create it a privilege.

The privileges made taxable by the Constitution, are such as cannot be exercised or enjoyed by any citizen or integral part of the community, without the intervention of some statutory provision, granting to, or conferring upon one or more individuals the right of doing some particular thing, as the right of banking, keeping a ferry, &c.

It might also embrace such as enjoy any privilege by way of exemption from the performance of onerous duties imposed upon the great mass of the community, if such exemption be first created by statute ; but this admits of great doubt.

Keeping a billiard table cannot be made a privilege, under that clause of the Constitution which provides that all property shall be taxed according to its value ; but that the Legislature may tax merchants, hawkers, pedlars and privileges. It is not a *privilege*, and therefore the law imposing a tax of five hundred dollars for every six months on each keeper of a billiard table is unconstitutional and void.

This was a proceeding upon a writ of *certiorari* to the county court of Pulaski county, issued upon the petition of plaintiffs, requiring the county court to certify and send to the Supreme Court a transcript of the record of the tax book of said county, embracing the State and county taxes assessed in said county for the year 1839, with all orders and objections made upon the consideration and adjustment thereof, and other things touching the same, on which it is alleged that the plaintiffs stand charged with the sum of one thousand dollars as the

semi-annual tax, in said annual tax-book, as the keepers of two billiard tables in the county of Pulaski for the term of six months.   By the return to said writ it appeared that the ordinary annual assessment list of the persons and property in said county, supposed to be subject by law to taxation, embracing billiard tables, was duly returned by the Sheriff, and regularly filed in the office of the Clerk of the Circuit and County Courts of said county, on the 23d day of March, 1839, and that the plaintiffs were, by the style of *Woods* and *Stevens,* assessed as the keepers of two billiard tables, with a tax of one thousand dollars, but the term of time for which they were so assessed and charged with said tax was not stated in the assessment list, that due notice of the return of said list was given by the Sheriff on the 25th day of March, 1839, that no appeal from the assessment made by the Sheriff was taken by the plaintiffs to the County Court, and that the County Court, at the first term thereof, after the same was returned and filed as aforesaid, on the 26th day of April, 1839, adjudicated upon said list and levied the county tax to be charged and collected thereupon, that the tax book was made out by the Clerk from said assessment list, agreeably to the order of the County Court, and on the 28th day of May, 1839, a regular warrant was endorsed thereon, in the form prescribed by law, with the seal of the County Court thereto affixed, and that the plaintiffs were charged in said tax book as the keepers of two billiard tables, with a State tax of one thousand dollars, which the Sheriff, by the warrant aforesaid, was required to collect and pay in the manner and within the time prescribed by law for the payment thereof.

PIKE, for the plaintiffs:

The only questions in this case for the consideration of the court, are:—

*First.* Whether so much of *sec.* 5, *chap.* cxxviii, of the *Revised Statutes,* as imposes upon the keeper of every billiard table in this State, for every term of six months, the sum of five hundred dollars for each table, as a State tax, is constitutional?

*Second.* Whether, if constitutional, that tax can be collected by placing in each *annual* assessment list and tax book a semi-annual tax

Stevens and Woods *against* the State.

without any regard to the time during which the tables are to be kept, and collecting by levy and sale as other taxes?

As to the first question, it is confessedly one of great delicacy, but from which the court will of course not shrink. All laws, and this as well as others, must be tried by the standard of the Constitution. If contrary to any provision of that instrument, the court would violate its oath if it were not to enforce that which purports to be law and is not law but void.

The Constitution expressly and in distinct words provides that " all property subject to taxation shall be taxed according to its value; that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. *No one species of property from which a tax may be collected' shall be taxed higher than another species of property of equal value.*"

" What cannot be done directly cannot be done indirectly," is a maxim of familiar application in the law, but it has a more significant meaning when applied to questions arising under the Constitution. If one species of property cannot *directly* be taxed higher than another species of the same value, it cannot be done indirectly. There is no fiction of law, there can be no quirk or quibble of legislation, whereby it can be so arranged that the mere billiard table itself can be taxed in any way whatever, except by a per centage upon its actual value.

It is therefore necessary, in order to sustain the law in question, that resort should be had to the succeeding clause of the Constitution, which provides that " the General Assembly shall have power to tax *merchants, hawkers, pedlars,* and *privileges,* in such manner as may from time to time be prescribed by law." It is contended that the law which imposes a tax of a thousand dollars a year is warranted by this broad word, privileges, and that not the billiard table is taxed, but the privilege of keeping it, not the article itself, but the right of keeping the article. It will therefore be necessary to examine the word "*privileges,*" as used in the Constitution.

The fundamental provision as to the revenue is that all taxes shall be *ad valorem.* The exception is the tax on merchants, hawkers, pedlars and privileges. The exception then as to privileges must not have a construction given to it which, by extension, could swallow

Stevens and Woods *against* the State.

up or even, to any extent, contravene the general policy of the Constitution.

The meaning of the word " privilege" is to be looked for in the common law. In the realm of England, and by the English law, there were a multitude of privileges of various kinds, most of which never crossed the Atlantic or took root in our soil. Among them were privilege from arrest of Peers, of Ecclesiastical persons, of Ambassadors of ancient demesne, of suits, of the chace, of the crown, of physicians, of the universities, &c.; but none of these are known here. Except in such instances as these the word privilege was synonimous with *franchises*, and in order to ascertain the meaning of one of these terms itwill be necessary to look to the definition of the other.

It is laid down that all franchises are derived from the King, and ought to be claimed by charter or prescription, which supposes the grant of the King. *Com. Dig.*, *Franchises*, *C. A.*; *Strata Marcella*, 9 *Co.* 27 *b*. Among these are enumerated the privilege to be a corporation, to have treasure trove, waifs and estrays, wreck of the sea, a court leet and other courts, royal fishes, fairs, markets, &c.; frank soldage, the custody of a jail, comisance of pleas, deodands, to have a sanctuary, to make a corporation, to make a coroner, to have fines, the county palatine, the cinque ports, &c.

It was the theory of the common law that all these privileges, liberties, and franchises spring from the crown; some of them, it was held, were originally parcel of the flowers of the crown, as waifs, deodands, wrecks, &c., and if these came again to the King they were held to be merged in the crown. Others were held to have been originally in the beginning erected and created by the crown, and if they came to the crown again they were not merged, as fairs, markets, hundreds, leets, parks, warrens, &c. *Strata Marcella*, 9 *Co.* 27.

In this country few, if any, privileges exist by prescription, and few of those known in England exist by Legislative grant. But it is a certain class of privileges created in all the States by grant from the Legislature, such as banking, the privilege of keeping ferries, and holding and keeping toll-bridges, of making and receiving toll on turnpikes, canals, and rail-roads; and unquestionably other privileges of the same nature might be created, and when created, would be

taxable. These are all special rights, powers, and privileges, not existing before, but created *pro hac vice*, and granted out by her Legislature as exclusive rights and franchises. Such privileges which are sources of wealth, or rather wealth in themselves, created and conferred by Legislative grant, and not capable of valuation like tangible and corporeal property, are properly taxable as privileges.

But the Legislature cannot, by first prohibiting the use of any article or the exercise of any calling, and then allowing it upon payment of a certain sum into the Treasury, create a privilege. If this could be done, there would no longer be any meaning or effect in the provision that no one species of property should be taxed higher than another species of property of equal value. If this could be done, the Legislature could tax every bureau a hundred dollars, or every table, or chair, or sofa, or book-case, to the same amount, merely by prohibiting the use or possession of each article except upon payment of such sum, and so making it a privilege to have, use, or possess it. They might pass sumptuary laws, and tax shoes, boots, hats, coats, cloaks, and every article of dress, comfort, luxury or necessity, by pursuing the same course, and making it a privilege to have, wear, or possess it.

There are certain rights which belong to us as freemen; we do not derive all our rights from Legislative grant; we have some which belong to us by nature, and as citizens of a free country; such are the rights of holding any species of property we choose, of wearing whatever garments we choose, and of possessing and holding any article of comfort or luxury which we please. As all then belong to us originally, they cannot be converted into privileges by any process of Legislative alchemy. No such magical transmutation can be effected. If it could, nothing would be easier than by the enactment of sumptuary laws and acts creating privileges to transform us at one sweep from free citizens of a republic to the mere serfs of the soil.

The right to keep and use a billiard table is one of these common rights. It is an article of furniture which every citizen had the right to own and possess before we framed the Constitution, and the Legislature cannot confer upon us the *privilege* of keeping what we already *ex communi jure* have the right to keep and use. Privileges are not so

created; if they are, every thing can be transmuted into a privilege, and by undergoing this process, an article of property worth a hundred dollars may to-day be taxed one dollar and to-morrow a thousand, while another article of the same, may still remain subject to the original tax of one dollar. Why not in the same tax the privilege of raising cotton, or hemp, or wheat, and so make a tax payable by one portion of the State alone.

The playing of billiards has not been yet made a criminal or penal offence, and therefore every person has the right either to keep or play on such a table. He has the same right to do so that he has to keep or play on a flute, violin, or organ; and if one can be made a privilege while it is lawful for every man, so may the other. There is nothing unlawful or criminal in one more than in the other, by the law of nature, or the code of morality, neither *malum prohibitum* or *malum per se.* To keep a billiard table therefore stands upon the same ground with keeping any other article of furniture, or for the purpose of amusement, and one cannot be changed into a privilege any more than the other.

A privilege, therefore, is a new right created by Legislative grant; not a right existing before and common to all, but now prohibited unless on payment of a sum into the exchequer. It is a portion of the prerogative of the State, carved out and given to an individual or a corporation. This is no such privilege. Nor could a privilege be created by declaring the keeping of a billiard table criminal, and then allowing it on payment of a sum in gross; that would be pandering to crime and present the strange spectacle of Legislative creation of a privilege to commit crime. It might be forbidden altogether, but it could never be made a privilege.

The keeping of a billiard table, therefore, is no privilege, and therefore cannot be taxed as such, and if so, it follows, as an inevitable consequence, that the law in question is unconstitutional. That it is so we have not the slightest doubt.

But admitting that it is not, still it cannot be collected as here attempted; it is improperly placed in the annual tax book; and the officer had no authority either by law or his warrant to levy upon property from which to make and collect it.

Stevens and Woods *against* the State.

By the 12th section of the chapter on revenue, in the Revised Statutes, the assessor in each county is required to assess certain species of of property therein designated *for annual taxation;* and such assessment is to be made of such property only as is liable to an *ad valorem* tax, and though by section 9, he is required to take an accurate account of all taxable inhabitants, property and privileges made taxable in his county, yet that must be understood to apply only to such privileges as are taxed with an annual tax.

By the warrant attached to the tax book, and which is the collector's authority, and the only authority under which he can act in the premises, he is commanded solely to collect *at certain rates* and *ad valorem* on all property therein taxed, and therefore no authority whatever is thereunder given him to collect a sum in gross of any person, or for any purpose whatever.

That the tax of five hundred dollars for a billiard table for six months is wrongly placed in the assessment list for the year, and cannot in that manner be collected, is manifest from the fact that in such case there would be no method of collecting the tax for the last six months in the year, or in case a person commenced keeping a table after the assessment for the year had been made, and also from the fact that a person is not required in any event to pay the tax for six months, or may do so for any time, however short, during which he desires to keep his billiard table.

It may be that the law is inoperative even if constitutional, by reason of the failure to prescribe any method for collecting it. No provision is made for the issuing a license to keep a billiard table, and no mode is pointed out by which the tax can be levied. But, however this may be, there can be no doubt that the tax, if it can be collected at all, can be assessed in the assessment list of annual taxation; and if it could, by what right does the Sheriff fix it arbitrarily at six months? If he could do that, he could as well, and with more show of reason, charge the whole tax for twelve months.

Whatever may be the method of collecting the tax it must be *one.* There cannot be one mode of collecting of these individuals and another of collecting of persons who commence keeping billiard tables after the annual assessment.

It is alleged in the petition that the Sheriff has levied upon the property of the petitioners for satisfaction of this tax. By what warrant? The writ of the Clerk attached to the tax book gives him no such authority, and he has none by any general provision of the law.

A tax imposed under a law which violates the Constitution, levied in violation even of that law, and attempted to be collected without warrant or authority, must of course be in violation of the rights of the citizen, and if so, should be perpetually superseded.

Ringo, *Chief Justice,* delivered the opinion of the Court:

The tax in question appears to have been assessed and charged against the plaintiffs as the joint keepers of two billiard tables, as upon the privilege of keeping them by the authority and under the provisions of the 5th section of the 128th chapter of the Revised Statutes of this State, page 674, which enacts that "there shall be levied and collected as a State tax the sum of five hundred dollars on the keeper of every billiard table in this State, and the like sum on every keeper of a nine-pin alley, for the period of six *months,* and at the same rate for a shorter time, and no person shall have or use any billiard table or nine-pin alley without first paying to the Sheriff the tax required by this act."

The plaintiffs insist that the tax thus imposed upon the keeper of a billiard table is not warranted by the Constitution, and that the enactment above quoted is repugnant thereto and void, and if valid, cannot be enforced in the manner attempted against them.

In support of the former position they contend that a billiard table is in every point of view "property," which, under the provisions of the Constitution, every person has an indefeasible right of acquiring, possessing, and protecting, and that it can only be taxed according to its value; and in support of the latter they urge the impossibility of enforcing the enactment, because the manner of assessing and collecting the tax in question is no where prescribed by law.

No questions of more importance, or greater delicacy, than these have ever been presented to this court, or received a more patient and careful consideration, and to the mind of the court they present difficulties of no ordinary character. The right of the citizen to acquire,

possess, and protect property, cannot be questioned, for it is expressly secured by the first section of the second article of the Constitution, which declares that " all free men, when they form a social compact, are equal, and have certain and inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property and reputation, and of pursuing their own happiness."

The term property has a most extensive signification, and according to its legal definition consists in the free use, enjoyment, and disposal " by a person of all his acquisitions, without any control or diminution, save only by the laws of the land." 1 *Blackstone's Com.* 138. Therefore, whatever a person acquires is his property, and according to the theory and practice of all governments, may be subjected to a tax, unless the right of taxation be restricted by some fundamental law to some particular species or descriptions of property; and subject to the like restriction, a greater or less amount of tax may be imposed *ad valorem,* or otherwise, according to the will of those to whom the taxing power is confined. In this State the Constitution ordains that " all revenue shall be raised by taxation, to be fixed by law," and that all property subject to taxation shall be taxed according to its value; that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property from which a tax is collected shall be taxed higher than another species of property of equal value, provided " the General Assembly shall have power to tax merchants, hawkers, pedlars, and *privileges,* in such manner as may from time to time be prescribed by law." *Const. Ark. title Revenue,* S. 1 *and* 2. From this quotation it will be perceived that the Legislature is bound by the Constitution in fixing the State tax on property so to regulate it that every species or description of property subject to taxation shall, according to its value, pay an equal ratio or amount of revenue to the State; or, in other language, property shall be taxed according to its value, and the tax thereon shall be equal and uniform throughout the State. This rule, as to the State revenue, is inflexible, and leaves with the Legislature no power to discriminate and fix upon one description or species of property a greater tax than that fixed by law upon every other

description or species of property of equal value subjected to taxation. In this case, the power of the Legislature to impose a tax upon the billiard tables in question, equal to that imposed upon other property by law, has not been controverted by the plaintiffs, and is understood to be conceded by them. But they deny the power of the Legislature to prohibit them from possessing property without first paying a tax, not upon the property itself, but for the right to possess or keep it. We have already adverted to the legal definition of property, and, as we apprehend, shewn conclusively that every person in this State has a pure and indefeasible right to acquire, possess, and protect it, and that it cannot, as property, be subjected to any other than an *ad valorem* tax.

And, if these positions be correct, it results therefrom, in our opinion, that the power to prohibit the acquisition and possession of property is unquestionably withdrawn from the Legislature: and the right of every citizen is in this respect perfect and plenary, and may be enjoyed without any other restraint than such as shall be necessary to the preservation of the individual rights of others, or the general welfare of the community. Thus every individual may lawfully acquire and possess any species or description of property, if such acquisition or possession does not destroy or deprive some other person of his property, or some enjoyment thereof, in which he is protected by law. But property when acquired and possessed must be so kept and disposed of as not to injure any paramount legal right of another, or affect injuriously the public morals or public good, so far as they are, or may be, protected by law.

We are, therefore, of opinion that the Legislature may, by law, for the purposes aforesaid, regulate and restrict the use and keeping of property, but cannot prohibit altogether any person whatever from legally acquiring and possessing property generally, or any particular species or description of property. Thus, for instance, they cannot prohibit any one from making or purchasing a billiard table, because it is an article of property, and, under the Constitution, any one may lawfully acquire, possess, and protect it as such; but the Legislature may by law so regulate or restrict the use of such table as to prevent any injury to the public morals or public interest therefrom, in

precisely the same manner that the use of other property generally may be regulated or restricted. The distinction being between a prohibition against the acquisition and possession or keeping of property and the imposition of burthens upon the property itself, or restrictions upon the use thereof; or between the total destruction of the right to acquire and possess property, and the regulation thereof in such manner as to prevent injury either to individual or public rights, and promote the public welfare. The former the Legislature is prohibited by the Constitution from doing, the latter that department is not restrained from acting upon " according to its free will and sovereign pleasure."

This court is therefore of the opinion that so much of the fifth section of the enactment of the Legislature above quoted as purports to prohibit every person from having a billiard table, without first paying to the Sheriff the tax mentioned in said enactment, is repugnant to the first section of the second article of the Constitution of this State, and therefore void. But it will be remarked that the tax in question does not purport to be a tax on the table as property, but simply on the plaintiffs as the keepers thereof, or upon the privilege of keeping them, and therefore the attorney for the State insists that it is within the proviso or exception above quoted, which expressly reserves to the General Assembly the power of taxing merchants, hawkers, pedlars, and privileges, in such manner as may from time to time be prescribed by law, because, as he contends, all persons are prohibited by law from having, or using, any billiard table, without first paying the tax imposed upon it by the statute, while every person upon paying such tax is authorized by law to keep and use such table, and therefore the law creates a privilege to be enjoyed only by such as pay the tax mentioned in the statute, which is clearly a tax upon this privilege, which the Legislature has competent power to impose. The plaintiffs deny that it it is within the legitimate power of the Legislature to create a privilege by first prohibiting the enjoyment of some right common to every citizen of the State, and then suffering such only as will pay a specified sum of money to the State, as a tax, the liberty of enjoying such right. The proviso under consideration designates certain objects which form an exception to the general rule prescribed

for raising revenue upon the basis of property, *ad valorem*, and may be subjected to taxation by law without regard to that principle, the power of the Legislature in respect thereto being expressly reserved *propria vigore;* consequently the Legislature may, in its discretion, enforce a tax of any amount upon either of the subjects mentioned in the proviso, without any respect to the value thereof and regard to the equality and uniformity of the tax throughout the State. For instance, two merchants, each employing the same amount of capital at different places, or at the same place, may, without violating the constitutional rights of either, be taxed the one in a larger sum than the other. So, likewise, a clock pedlar may be taxed higher than a pedlar of jewelry, tinware, groceries, &c., or *e converso*, or the one may be be taxed and the other not, and the same privilege applies to hawkers and privileges as to all which the Legislature possesses the power of making such discriminations as that department shall determine to be proper. Because it is not only not withdrawn from, but expressly reserved to them, by this proviso in the Constitution. Yet they have not the power of absolutely prohibiting any person from becoming a merchant, hawker, or pedlar, until he shall have paid a tax as such, because it is parcel of the public liberty of every citizen to employ himself or his capital in such manner as he may choose, provided he does not invade the legal rights of another, or contravene the public policy of the community as regulated by law. Therefore, this right is indefeasible and secured by the Constitution to every citizen in common. Such, however, is not the case in this particular as regards privileges, for it is a primary and most essential principle of our Constitution and government, forming as it were the base upon which the whole superstructure rests, that every citizen is by nature endowed this with equal rights and equal privileges, consequently no individual in government does or ever can have or possess any privilege which is not common to every other citizen of the State, until it is created by law and acquired by him under the authority thereof, and in the manner therein designated; and surely no one indulges the supposition or entertains the opinion seriously that it was the design of the Convention to leave with the Legislature, to be exercised at will, the power of taxing every right enjoyed in common by the whole community, or of taxing

them in any other manner, or by a different rule, from that prescribed in the Constitution; or that such power is insidiously reserved, concealed under the mask of a special authority to tax privileges, inserted in the Coustitution by way of exception to the general rule. If such should be the case the insertion of any general principle or rule to regulate the raising of revenue was superfluous, if not absurd, and therefore, in our opinion, such power was intended to be, and is, by the Constitution, withdrawn from the Legislature, and although that department has constitutionally the power of subjecting to taxation merchants, hawkers, pedlars, and privileges, by law, in such manner as they shall think proper, such tax can only be imposed upon merchants, pedlars, and hawkers, who are actually engaged or concerned in the business of merchandizing, pedling, or hawking, and upon privileges created by law and legally existing at such time as the law imposing the tax directs it to be levied thereon.

Having thus stated the most important principles which we consider immediately applicable to the question presented by the case before us, the duty devolves upon us of considering and deciding whether the right of using a billiard table constitutes a privilege, within the meaning of the proviso of the Constitution, upon which a tax may be imposed. We have already expressed the opinion that a billiard table is property, and that the Legislature cannot prohibit a citizen from acquiring, possessing, and protecting such property, but that they can by law regulate or restrain the use of it, so that no injury shall result therefrom to the public; and further, that a right common to every citizen of the State, cannot, by being first prohibited by law, and then allowed to be enjoyed by such only as will first comply with certain conditions prescribed by statute, be created a privilege within the meaning of the Constitution which may be subjected to taxation at the will of the Legislature, and that a privilege to be the subject of taxation must legally exist before it can be taxed, that is, its existence must necessarily precede the tax, and not depend upon the condition of a tax being first paid before it acquires life and being: otherwise, the sum paid would be a bonus or consideration for obtaining the privilege, instead of a tax upon the privilege. It would be the subject of stipulation and contract between the State and the party purchasing

the privilege, rather than a legal imposition upon the privilege enjoyed. It would not, as every other imposition of taxes does, depend alone for its obligation and efficacy upon the statute, which in such case could not be enforced, as all laws are or may be, without any act of the party. Besides this, the right of using a billiard table, subject to the law regulating or restraining its use, is a common right, enjoyed by every citizen, which he could legally exercise without restraint, and without the aid of any law conferring such liberty or creating such privilege; and hence the necessity of first inhibiting the right to use such table before the attempt to impose a tax upon the use of it as a privilege. But if we are not mistaken in the nature and character of this right, the Legislature is as competent to inhibit the culture and acquisition of cotton, or corn, or the acquisition of horses or negroes, or any other article, species, or description of property, and then permit the production of the former, or the acquisition of the latter, by such persons only as will first pay to the State a sum of money for such liberty or privilege. They are all by the principles of our Constitution and government open to the enterprize of every citizen, without any restriction, and may in any lawful manner be acquired and possessed by all without the intervention of any grant or privilege from the government, although their rights may be respectively so regulated by law as to prevent their exercise from operating injuriously upon the morals or interests of the community, still they can neither be destroyed, or their existence be made to depend upon any act to be performed, or pecuniary consideration paid to the State; and we apprehend that no one has ever entertained the opinion that the Legislature could subvert this most equitable and important principle of taxation, by first prohibiting the exercise of a right common to all, the benefits of which were intended to be permanently secured to the citizens by inserting it in the Constitution as a law binding upon, and so operating as to control the Legislative department, in the exercise of its legitimate and otherwise uncontrolled power of imposing burthens upon the people, by way of taxation, upon such principles as they might think proper to establish by law, without regard to its operation being equal or uniform; such, for instance, as the right of acquiring and possessing land, and then transforming and creating a

privilege out of such right, subject to arbitrary taxation, by permitting such only to enjoy the right as will pay to the State a specified sum of money arbitrarily prescribed by the Legislature before he can purchase or acquire title to, or possess, or cultivate, lands in this State, and yet the power of establishing and enforcing such imposition depends upon precisely the same principle as the power of prohibiting. And upon the like condition authorizing the "keeping" of a billiard table, neither of which is, or, in our judgment, can be, by any act of the Legislature, created a privilege subject to taxation as such within the meaning of the proviso in the Constitution. The privileges there contemplated being, in our opinion, such as cannot be exercised or enjoyed by any citizen, or other integral part of the whole community, without the intervention of some statutory provision granting to, or conferring upon, one or more individuals, the right of doing some particular thing, as, for instance, the right of banking, of keeping a ferry across a navigable water where it is exclusive, of constructing a public road with the right of receiving tolls of such as travel thereon, and the like, and perhaps it might also embrace such as enjoy any privilege by way of exemption from the performance of onerous duties imposed upon the great mass of the community, if such privilege be first created by statute; but it certainly admits of serious doubt whether the latter class of privileges, if any such exist, were meant to be embraced by the proviso in question. And although we expressly reserve that question, and will not now express any opinion upon it, yet it appears to us most probable that it was not the intention of the Convention to embrace them therein, because privileges, by way of exemption, are generally, if not always, created in favor of those who have paramount public duties to perform, the performance of which might conflict with their obligation to discharge such minor duties from which they are exonerated, or to such as are considered unable to bear the burthen of discharging such obligations, in consideration whereof they are exempted or privileged therefrom, either on the ground of necessity or of public policy, and the injustice of subjecting such privileges to taxation is so apparent as to make the impression that such was not the design of the Convention, and, on the other hand, it is evident that the class of privileges first mentioned might, in some instances at

Stevens and Woods *against* the State.

least, constitute proper objects of taxation, because they confer upon the possessor extraordinary rights not unfrequently coupled with special exemptions, and generally productive of pecuniary gain, though, perhaps, in a ratio very unequal in reference to the capital employed, and therefore the power of imposing such tax upon them respectively, without regard to uniformity or reference to the amount of capital employed, was, in our opinion, very appropriately left in the discretion of the Legislature. But it may be said that rights of this description are not in legal contemplation embraced by the term privileges, and this perhaps might be urged with some appearance of plausibility, if the term must necessarily be understood as being used in its most limited technical meaning, according to which it would probably be restricted generally, if not entirely, to the various descriptions of exemption recognized by the common law, such for instance as that an attorney at law shall not be arrested in a civil action, and shall only be sued by bill in the court of which he is an attorney, that a citizen of the counties palatine of Chester, Lancaster, and Durham, and the royal franchise of Eli, and of the universities, shall not be sued in any other than their respective courts, and numerous privileges of a similar character extended by the common law to particular persons or places by way of exemption from some duty imposed upon or authority exercised over all other persons and places.

But upon examination it will be found that few, if any, of this class of privileges were ever recognized or admitted in any of these United States, to the situation and local concerns of which they are generally inapplicable, and some of them are opposed to the fundamental principles of our institutions and government, nor was any of them recognized in the jurisprudence of this Territory when the Constitution was framed and adopted, and therefore the presumption is almost irresistible that they were not in the contemplation of the Convention. Besides, even at common law, the term privileges embraced such rights as those first mentioned, although some of them are perhaps more appropriately designated by the name franchises, and are generally classed and referred to in the common law by that name, yet the meaning of the term privilege and franchise if not synonomous is so apposite, that they may without much impropriety be used as compre-

hending the same class of objects generally, and in this sense we think it must be understood as used in the Constitution, every part of which must be construed with reference to the whole, so that each part may operate harmoniously in advancement of the general object and design, which, in regard to taxation, appears to have been an equalization of the burthen, and this it was supposed would be best attained by requiring all property subjected to taxation for State purposes to be taxed according to its value, excepting only merchants, pedlars, hawkers, and privileges, subject to which the rule was not supposed to apply with as great certainty, propriety, and justice, by reason of their great diversity and the difficulty of ascertaining their respective value and applying to them with equal justice and propriety· any permanent fixed rule.

But, however this may be, we deem it unnecessary to pursue the general investigation further, as the whole subject of privileges is not necessarily involved in the decision of the case before us, and we are decidedly of the opinion that the facts presented by the record before us do not show a privilege enjoyed by the plaintiffs, which, under the Constitution, could be made the subject of taxation as such, and that so much of the fifth section of the statute above quoted as purports to impose a State tax of five hundred dollars on the keeper of every billiard table in this State for the period of six months, and at the same rate for a shorter time, is in conflict with and repugnant to the provisions of the Constitution of this State, contained in the second section thereof, under the title "Revenue," and therefore void.

Wherefore, it is the opinion of this court, that the State tax of one thousand dollars assessed and charged against the said plaintiffs by the Sheriff of Pulaski county, and contained in the tax book of said county for the year A. D. 1839, purporting to be a tax upon the privilege of keeping two billiard tables, is unauthorzed by law, and for this reason the same ought to be, and hereby is, forever superseded.