Chief Justice Watkins delivered'the opinion of the Court. The- defendant was convicted on an indictment for setting up and keeping a ten-pin alley, without first paying into the State Treasury twenty-five dollars, and twenty-five dollars into the county treasury of Jefferson county, where it was set up, and which license-the indictment alleges he refused' to pay. The defendant pleaded not guilty, and a former acquittal of an indictment for setting up and keeping the same alley without having paid the license. Upon the trial, the jury found that the defendant had set up and kept the alley, and had refused to pay the license as charged, and we will not question the sufficiency of the evidence to prove those facts. It was proved; on the part of the defendant, that he bought the alley of another person, who had built it originally, and on setting up and keeping it, had paid the license specified into the State and county Treasury; and upon this he claimed that one payment sufficed under the statute, so long as the same alley was kept up, no matter into whose hands it might he transferred: The defendant also proved by the record, his plea of former acquittal, and upon the construction of the statute, he claimed that such acquittal was a bar to any further prosecution against him in respect of the same alley, so long as he continued to keep it; but the court charged the jury that he might well be convicted upon proof of his having set up and kept the alley, without paying the sums specified as a license, at any time" since the finding of the previous indictment. The defendant reserved his exceptions upon the decision of the court overruling his motion for new trial. Various questions arising upon the evidence, and instructions were made in the court below, and are argued here. But it may not become material to consider them; and we only notice two of the positions relied on by the defendant before stated, as affording a practical commentary upon the statute, the validity of which is here called in question. In order to a correct understanding of our opinion concerning the statute, it is necessary to recur to the previous legislation and decisions bearing on the subject. By the Revised Statutes of 1839, (title Revenue, sec. 5,) it was enacted, “ That there shall be levied and collected, as a State tax, the sum of $500, on the keeper of every billiard table in this State; and the like sum on every keeper of a nine-pin alley, for the period of six months, and at the same rate for a shorter period ; and no person shall have or use any billiard table, or nine-pin alley, without first paying to the sheriff the tax required by this act.” This st.atu.te had the merit of being plain and unambiguous ’in its terms and intention to raise a revenue from billiard tables and pine-pin alleys, to be assessed upon the persons keeping them, and collected as other taxes. In the case of Stevens & Woods vs. The State, (2 Ark. 291,) directly involving the legality of this tax, upon grave consideration, it was decided that, .under the constitution, billiard tables might b.e taxed as property, according to their value, and if made by law the subject of taxation, they could not be taxed at a higher rate than any other species of property, from which a tax may be collected. And ¡further, that, so far as the act seemed to contemplate that the tax should be imposed, not upon the property, but upon the person .keeping it, the court there decided that the right tp acquire and keep a billiard table was one common to every citizen, and is ,not a privilege within the meaning of that clause of the constitution which confers upon the general assembly power to tax merchants, hawkers, pedlars, and privileges, in such manner as they may prescribe by law, and, so far as the statute was to be construed as an attempt on the part of the legislature to make the keeping of a billiard table a privilege by prohibiting the use .of it, and then to tax the privilege, it was in derogation of the .constitution, the provisions of which were imperative upon the ■legislature. It w,as conceded that the legislature could well restrict or prohibit the injurious use of billiard tables or any other species ,of property, but could not make the right to use any spe,cies of property depend upon the payment of a tax or license to do so; because that would be in derogation of the common right of acquiring, possessing and protecting property. It was demonstrated that the most alarming consequences mightfollow, against which there would be no protection, if it were conceded that the' legislature had the povyer in that direct mode of evading the constitutional provision in regard tp taxation. The principles established by that case, never since departed from, or doubted, were re-affirmed, in the case of Gibson vs. The County of Pulaski,(ib. 309;) and in the case of Pike vs. State, (5 Ark. R. 204,) the court adhered to its former construction of the clause in the constitution regulating the taxing power; and upon the question there presented, distinctly laid down the principle that property, of every character and description, upon which a State tax may be levied, must be taxed in proportion to its real and true value. In consequence, as we are bound to. suppose, of the decision in Stevens & Woods vs. The State, the general assembly, by act of the 19th December, 1840, prohibited the keeping of a billiard table and nine-pin alley, by making it an indictable offence under severe penalties. This act, against which no constitutional objection was, or in our opinion could be, raised, appears to have been deemed impolitic, and was repealed by act of the 1st February, 1843, the 3d section of which enacted, “that any person or persons who shall set up and keep a billiard table, or nine or ten pin alley, at which any game shall be played, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined $50: Provided, however, That any person who shall be fined for keeping and exhibiting such table or alley, shall not again be prosecuted or fined for keeping the same table or alley for the space of one year after the date of such conviction.” The construction of this 3d section, upon which the defendants were indicted, was involved in the cases of The State vs. Hanger & Bell, (5 Ark. 413,) and The State vs. Hiner, (ib. 417.) It was contended by the defendants there, that the act was unconstitutional, because it was an indirect mode of doing that which the legislature could not do directly, and that the obvious design of the proviso was to convert the penalty into a tax by exempting the accused from any further prosecution for keeping the same alley, for one year after conviction. The court in those cases, governed by the rule of construction, that where a statute is divisible, and a portion of it is repugnant to the constitution, or contains a proviso repugnant to the purview of the act, so much of the statute is to be upheld as does not conflict with the constitution, and the enactment sustained-by rejecting the proviso, decided that so much of the statute a*s prohibited the keeping of a table or alley upon which games are played, by making it a penal offence, was not repugn ant to the provision contained in the constitution, nor subversive of any right protected by it; but that the proviso was void, inasmuch as the effect of it would be to legalize the acts prohibited for the period of a year from the date of each conviction, and so make it operate indirectly as a periodical tax levied upon the convict for the privilege thus attempted to be secured to him of exhibiting such table or alley, by the exemption from punishment for a stated time. This construction 'was in accordance with the soundest rule of interpretation, and the decision was an unavoidable consequence of the opinion pronounced in Stevens & Woods vs. The State. The law thus stood until the act of 8th January, 1845, which repealed the 3d section just before noticed, of the act of 1st February, 1843, and in lieu of it enacted, “That it shall not be lawful for any person or persons to set up and keep .a billiard table or ten-pin alley without first paying into the State Treasury $25, and $25 into the county treasury, in which said table or alley may be set up.” “And that if any person or persons setting up and keeping a billiard table or ten-pin alley refuse to pay the license, they shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than $50, nor more than $100, provided that nothing herein contained shall be so construed as to prevent any person from being fined and dealt with according to law for betting at any game of billiards or ten pins.” This statute, upon which the appellant here is indicted, came up for consideration by this court in the case of Mayers vs. The State, (3 Eng. 223.) There the attorney for the State evidently designed to take the distinction between the right to prohibit and the right to punish as an offence, and the want of power in the legislature to tax or license as a privilege—according to the opinion in the State vs. Manger Bell. The indictment charged that the defendants set up and kept the billiard table, and suffered persons to play and game thereon,“omitting to charge that they had refused to pay the license therefor. The question of the constitutionality of the act was presented in the record in that case, but the court declined to express any opinion upon it, for the reason assigned that the indictment failed to show any offence under the act, inasmuch as it did not charge that the defendants “refused to pay the several sums specified in the act.” Although this was the very marrow of the question, now under consideration, i. e., whether the right to keep a billiard table could be made the subject of a license, we are at liberty, from the express declaration of the court in this case, to consider the question an open one. It is sufficiently plain, from the history of this statute, that the legislature desire to raise a State and county revenue from billiard tables and ten-pin alleys, either in the shape of a tax or license; and as to the propriety of such a measure, the members of this court, as citizens, having, through, our representatives, a voice in the adoption of a constitution, or in the enactment of laws that are to govern us, might entertain opinions for or against it, that can in no wise influence our determination concerning what the law is. It then becomes necessary that we should endeavor to reconcile the provisions of the constitution, and the adjudged cases involving their construction, and in view of the difficulties which have surrounded this whole subject, we shall consider ourselves fortunate to be able to place our decision in this case on some intelligible and satisfactory footing. It was intimated in the case of Gibson vs. The County of Pulaski, as being more than doubtful whether the provisions of the constitution respecting revenue, other than the inhibition of poll taxes, except for county purposes, was not intended to be applicable only to State revenue, and such indeed would seem to be the object and scope of those provisions; and the dissenting opinion. of the Chief Justice in The County of Pulaski vs. Irwin, (4 Ark. R. 473,) went to the full length of holding that those provisions were not applicable to the raising of revenue for county purposes, because the constitution (art. 6-, sec. 9) vested the power of taxation- and disbursement for county purposes in the respective county courts, and that this was a distinct grant of power that did not require the aid of legislation. The majority of the court, however, in that case, decided differently. They held that the section referred to did not confer on those tribunals the power of taxation and disbursement without legislative action. Adopting- this interpretation, we find that the general assembly, in regulating the jurisdiction of the county courts, (Rev. Stat., title Courts, sec. 10,) have delegated to those tribunals the authority, according to their discretion of granting merchants, pedlars, tavern, grocery and ferry licenses; so of auctioneers. (Rev. Stat., title Auctioneers, sec. 4.) The power of the general assembly to tax or license ferries might be upheld upon the distinct ground that it was a privilege, or franchise, by reason of the j urisdiction of the sovereign over navigable water courses, as intimated in Stevens & Woods vs. The State, not of common right; and the exercise of which as a privilege the legislature could grant or withhold on such terms as it might deem proper. So the unqualified power of taxing merchants, hawkers, and pedlars, is given by the constitution to the legislature; and auctioneers may be said to be within that class. The statute (title Taverns and Groceries) requiring them to be licensed for that purpose, is impliedly upheld by the decision in Hensley vs. The State, (2 Eng.252,) where the point was made and urged in argument that the law was unconstitutional. This statute requires a license to be obtained for keeping a public tavern, though it be not for the retail of spirituous liquors, and even if the license rested solely on the ground of retailing spirituous liquors as merchandize, the question would arise in view of the principles laid down in Stevens & Woods vs. The State and Gibson vs. The County of Pulaski; and it would be difficult to uphold the law, because, according to the reasoning of those cases, the legislature could not prohibit any person from becoming a merchant, hawker, or pedlar,until he shall have paid a tax as such, seeing it is the right of every citizen to employ himself or his capital in such manner as he may choose, not in violation of the rights of others, or in contravention of public policy; and on the supposition that he was liable to pay an ad valorem tax on his stock of liquors as merchandize, he could not be liable to an additional tax for the privilege of keeping or vending them. The principle asserted by those cases is, that the legislature may in all cases prohibit or restrain by penal enactments, the use of any property, or the exercise of any business or calling, if deemed to be against good policy, or injurious to the public morals, but cannot tax as a privilege the exercise of a common right, which the very act of licensing admits, is neither immoral or injurious to the rights of others. How, then, are these difficulties to be obviated; serious difficulties, we must consider them, if their effect is to raise a constitutional question in respect of the ordinary sources of revenue of every county and incorporated town in the Statei Our opinion is, that the general assembly may well by legislation authorize counties and incorporated towns to impose á tax upon billiard tables, ten-pin alleys, taverns, groceries, and the like, for municipal purposes, and as a police regulation for the preservation of good order; and that the constitutional provisions concerning revenue, were intended to apply to State revenue, and are not and were not applicable to taxes levied for county purposes. All such local taxes for county or municipal purposes might well be authorized if self-imposed, according to the discretion of the people of such county or town, through their magistrates or officers, elected by and directly responsible to them. The tendency of ourform ofgovernmentisto diffuse rather than to centralize the exercise of power. The general assembly, composed of members no matter how capable and honest, would be illy qualified to judge of what is best for the inhabitants of a particular county, in the management of its local or domestic concerns. So the county court, though composed of upright and judicious magistrates, could not well assume to regulate in detail the affairs of a municipal corporation ; but each is a community, having powers and duties to be exercised within its appropriate sphere. This view is, in our opinion, the only mode of harmonizing those provisions of the constitution and the legislation and he adjudicated cases on the subject. According to this construction» which we adopt with much hesitation, because of the difficulties which an anxious consideration of the subject discloses on every side, the provisions of the constitution are imperative upon the general assembly in all legislation concerning State revenue. They can only tax privileges that are ascertained and recognized to be such as at the common law. But the imposition of taxes, granting of licenses by counties or towns, may be authorized or regulated by legislation, and that legislation is not necessarily controlled or limited by the provisions of the constitution in regard to State revenue. And it seems to us there is no mid- . die ground, and no other ground on which to place our decision. The opinion of the court in the case of Waters vs. Leech, (3 Ark. 110,) is a distinct recognition of the power of the corporation of Little Rock, under its charter, to license theatrical exhibitions and the like, and of course to forbid them without the payment of such license. Upon the same ground rests the power of every municipal corporation to levy and collect wharfages, to license draymen and carriages, groceries, and the like. So the county courts may be authorized to grant or fix the amount of licenses as a means of raising revenue, wholly freed from any constitutional questions affecting State revenue. If it be said¡ that such discretion is left to the counties or towns, it is liable to abuse, the answer is, that all power or discretion must be lodged somewhere, and no matter where is liable to be abused; and the presumption is that the people of a county or town are the safest depositories of any power or discretion, the exercise of which affects their own immediate and local interests. The only adjudged case that can be said to conflict with this construction, is that of Gibson vs. The County of Pulaski, where the complaint was of the imposition of a county tax for the privilege of keeping, a stallion. The only question argued or décided by the court in that case was whether the right to keep a stallion could be taxed as a privilege under the constitution. The court in that case appear to have followed the track of Stevens & Woods vs. The State, just then decided; and however just and proper it must be admitted, the opinion of the court is, in Gibson vs. The County of Pulaski, so far as applicable to the illegality of such a tax for State purposes, yet we do not see how the actual decision can be reconciled with the remark of the court there made, that it had not intended to decide or in fact decided whether taxes levied for county purposes, must be governed by the constitutional provisions in regard to revenue, or might be otherwise in the discretion of those to whom the power of prescribing such taxes is confided. For the reasons here set forth, we are bound to decide, that so much of the act of 8th January, 1845, as prohibits any person from setting up a billiard table, or ten-pin alley, without paying a sum of money into the State treasury, as a license therefor, is repugnant to the constitution, and void; because there is no power to do that indirectly which cannot be done directly; and the license is none the less a tax for the privilege of setting up such table or alley, because collected or enforced by means of a criminal prosecution. The indictment in this case also contains a count for setting up and keeping a ten-pin alley, without first paying the sum of $25 into the treasury of Jefferson county. Although our opinion is that the general assembly may constitutionally impose, or authorize the county courts to impose such tax, by conferring on them the power to grant licenses as a means of raising revenue for county purposes, and although the payment of the sum specified would seem to be an implied license to exhibit the table or alley, yet the whole scope and provisions of the act are so intimately blended that we do not feel warranted by any rule of judicial interpretation, to separate those provisions in order to give to a part of the act an effect we cannot pi’esume was intended. The whole enactment must therefore stand or fall together, as was the case in Eason vs. The State, (6 Eng. 481.) The propriety of this construction will more plainly appear by adverting to the questions that would arise upon the construction of the act, if any part of it could be adjudged valid. It relieves the court from the necessity of determining whether the license contemplated by the act is personal to him who sets up the table or alley, or may be transferred with it to an assignee, or whether the payment of the license enures as an indemnity against prosecution for a year as a periodical tax, or for any indefinite period of time, while continuously kept up by the same person. On these points, there is a singular obscurity in the terms of the act,'which comes in aid of the conclusion that the attempt to interpret the act, by upholding part and rejecting part, would be equivalent to the usurpation by this court of legislative power. Because the indictment does not charge an offence against any existing law of the land, the judgment of the circuit court is re-yprsed, and the defendant discharged from prosecution.