WISEMAN *v*. PHILLIPS.

4-3942

Opinion delivered June 3, 1935.

*Louis Tarlowski* and *Millard Alford,* for appellant.

*Edward B. Dillon, Rowell & Dickey, Buzbee, Harrison, Buzbee & Wright, Oscar Fendler* and *Reid, Evrard & Henderson,* for appellees.

*Rose, Hemingway, Cantrell & Loughborough, G. R. Smith, Joe C. Barrett, D. A. Bradham* and *Owens & Ehrman, amici curiae.*

McHANEY, J. The General Assembly of 1935 enacted act 233, the "Arkansas Emergency Retail Sales Tax Law," as it is named in § 1. Its purposes as defined in § 2 are "to provide relief for the free common schools of the State, for the wards of the State who are supported from the Charities Fund, and for other worthy causes." Section 3 consists of definitions of terms as used in the act. Section 4 levies the tax. It reads as follows:

"Beginning May 1, 1935, there is hereby levied upon, and shall be collected from all retail sales, as herein defined, a tax of two (2%) per centum of the gross proceeds derived from said sales.

"The tax imposed by this section shall apply to:

"(a) All sales at retail of tangible personal property.

"(b) All retail sales at or by restaurants, cafes, cafeterias, hotels, dining cars, auctioneers, photostat and blue-print sales, funeral directors, and all other establishments of whatever nature or character selling for a con-

sideration any property, thing, commodity, and/or substance.

"(c) All sales of admission or admittance to athletic contests, theaters, both motion picture and stage performances, circuses, carnivals, dance halls and other places of amusement.

"(d) All retail sales of electric power and light, natural gas, water, telephone use and messages and telegrams.

"(e) Where there are adjoining cities or incorporated towns which are separated by a State line, the taxes and licenses to be paid by dealers in and on sales and services in such adjoining city or incorporated towns on the Arkansas side of the State line shall be at the same rate as provided by law in such adjoining State, if any, not to exceed the rate provided in this act."

Section 9 requires the retailer to collect the tax from the consumer, and account for same to the Commissioner of Revenues, who is required to deposit his collections in the State Treasury, 35 per cent. to the General Revenue Fund and 65 per cent. to the Common School Fund. There are many administrative provisions not deemed necessary or pertinent to a proper discussion of this case. Certain exemptions are set out in § 15, and the following is the concluding paragraph of said section:

"All foods necessary to life, more specifically defined as follows: Flour, meat, lard, sugar, soda, baking powders, salt, meal, butter fats, eggs, and all medicines necessary for the preservation of public health, each of above to be exempt from the provisions of this act."

Certain refunds of taxes paid by governmental agencies, hospitals and sanatoria are authorized by § 16, and § 17 makes it unlawful for any retailer to assume or absorb the tax or to advertise that he will do so. Section 20 provides that a tax on sales of separate articles of merchandise, commodity or personal property, sold in this State for use outside this State, for a price of $200 or more, "shall bear the rate of sales tax of the State where the same is to be taken and used."

Appellee brought this action to enjoin and restrain the appellant as Commissioner of Revenues from taking steps to enforce the act and from collecting the tax. Its constitutionality was attacked by appellee on five grounds, as follows: (1) That it is violative of § 5, article 16, of the Constitution of this State, in that (a) it is a property tax, and that it violates the provision. of that section that a property tax shall be equal and uniform, because certain articles are exempt from the tax; and (b) that it is not uniform because in § 4, paragraph (b), the tax is levied on articles sold at certain designated places, and that such listed places does not include all places where retail sales are made of like tangible personal property. (2) That it is further violative of said section and article because the tax imposed is a privilege tax on the privilege of doing business as a merchant, which is a matter of common right not subject to be taxed. (3) That it imposes upon the citizens of the State a tax upon the privilege of using and consuming articles necessary for existence, which is a matter of common right not subject to be taxed. (4) That it is an occupation tax which may not be levied for State purposes. And (5) that it constitutes double taxation.

Appellant filed an answer denying all the allegations of unconstitutionality of the act. Later, two interventions were filed by citizens and taxpayers attacking the act on the same and additional grounds. One by J. B. Hall, a citizen of Little Rock, who alleges that said act is unconstitutional and void for the further reason that it imposes upon him and other citizens a tax upon the right or privilege of purchasing in the State of Arkansas, for their own use and consumption, articles and commodities which, as a common right, he and every other citizen of the State has a right to purchase in the ordinary course of business, free from the imposition of any tax upon the exercise of such right or privilege. Other allegations of unconstitutionality of the act are made, some of which will be hereinafter referred to. An intervention was also filed by Joe Isaacs, a dry goods and clothing merchant, of Blytheville, and William Hundhausen, a retail grocer and meat merchant of West Mem-

phis. They make an attack on said act on numerous grounds, some of which will be hereinafter referred to. A demurrer was filed to this intervention and overruled. A stipulation was filed as to the intervention of Hall, and the case was submitted to the court on the complaint, the answer, the interventions, the stipulation and demurrer. From all of which the court found that the prayer of the complaint and of the Hall intervention should be granted, and, the demurrer to the Isaacs-Hundhausen intervention being overruled, and appellant declining to plead further, the court perpetually enjoined appellant from proceeding further in the enforcement of said act 233 of 1935. The case is here on appeal.

At the invitation of this court, several members of the bar have filed excellent briefs as *amici curiae,* some on one side of the question presented, and some on the other, in addition to the splendid briefs of counsel for the parties, including interveners. We are duly appreciative of this assistance and of the painstaking generosity of time and energy spent in this connection.

In determining whether an act of the General Assembly is constitutional, we must bear in mind that that instrument is not a "grant of enumerated powers of the Legislature, not an enabling, but a restraining act," and that the Legislature has the undoubted power to make the written laws of the State, unless it is expressly, or by necessary implication, prohibited from so doing by the Constitution; that the act is presumed to be valid, and that all doubt of its validity must be resolved in favor of the act. *Bush* v. *Martineau,* 174 Ark. 215, 295 S. W. 9.

In the Isaacs-Hundhausen intervention and brief it is alleged and contended that the act is void because its title is not germane to the body of the act, and that § 2, above quoted, falsely states the purpose of the act in that one of the purposes named is to provide relief "for the wards of the State who are supported from the Charities Fund," and that § 9 thereof apportions all the funds collected to the General Revenue and Common School Funds, and none to the Charities Fund. This objection is not well taken. It is well settled that a statute is not invalid

because the title does not refer to all the matters covered in the body of the act. See *Westbrook* v. *McDonald,* 184 Ark. 740, 43 S. W. (2d) 356, 44 S. W. (2d) 331, for one of the latest cases on the subject. Nor can we hold the act void because no distribution is directly made to one of the enumerated purposes. The deposit of 35 per cent. of the funds to the general revenue fund is certainly germane and comes within the clause "and for other worthy causes," and the Legislature might take it out of the General Fund and put it in the charities fund.

It is next argued in the same brief that onerous and burdensome duties are placed on retail dealers in §§ 9 to 14, inclusive, against their will. But this court answered this contention in *Standard Oil Co.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753, when it said on page 125 that: "It is next contended that the due process clause of the Constitution of this State and of the United States is violated by the requirement laid upon the dealers in gasoline to collect and pay the tax. It must be remembered that the tax is not laid on the sale of the gasoline, nor upon the business of the dealer. The dealer is not required to pay the tax, but to collect it, keep and present an account thereof, and pay it over to the county treasurer. The purpose of the statute is twofold, namely, to impose a tax upon the purchaser of gasoline for the use of the car, and to regulate the business of the dealer by requiring him to collect the tax and pay it over to the county treasurer. It is certainly within the power of the Legislature to regulate the business of selling gasoline, and it is not an unreasonable regulation, for it does not involve the payment of any fee, nor the performance of any unreasonable task." Here the purpose of the act is to impose a tax upon the transaction of a purchase at retail for use or consumption of articles not exempt, and to regulate the business of the retailer by requiring him to collect the tax and pay it over to the Commissioner of Revenue. This is not an unreasonable regulation, "for it does not involve the payment of any fee, nor the performance of any unreasonable task."

Complaint is also made of § 20 that it violates the equal protection clause of the Federal Constitution be-

cause of the provision that sales of $200 or more for use outside the State shall bear the rate of sales tax of the State where taken; also of § 4 (e) relating to cities and towns divided by a State line above quoted. In the first place, these interveners do not claim that they are affected by either provision. In the next place, the recent case of *Bollinger* v. *Watson,* 187 Ark. 1044, 63 S. W. (2d) 642, holds to the contrary.

It is next contended that § 5 is bad because of that provision that any person doing a credit business "may make application to the Commissioner for permission to prepare his returns on the basis of cash actually received." And "any person making such application shall be taxable on all moneys collected * * * regardless of the date of sale." The argument made is that this is a tax upon the gross receipts, and not upon sales, or a tax upon gross income; also that it is a discrimination against those who pay for what they buy and those who buy on credit and do not pay at all. We cannot agree. It is a tax upon the transaction whether for cash or on credit. If on credit the collection and accounting therefor may be postponed until the bill is paid. It is certainly to the interest of the seller to collect his credit sales, else a credit merchant would not long stay in business. Permitting the seller to collect and account for the tax when he collects the account is not discriminatory. *Reif* v. *Barrett,* 355 Ill. 104, 188 N. E. 889.

It is next said the act unlawfully delegates legislative power to the Commissioner when in § 6 it provides: "The Commissioner shall, therefore, prepare instructions to dealers by setting out to them suitable brackets of prices for applying the tax." It is said that this provision gives the Commissioner power to fix the tax on small sales. We do not agree with this contention. The power given is to "prepare instructions to dealers by setting out to them suitable brackets of prices for applying the tax," not to fix the tax, for that is fixed in the act at 2 per cent. As to the power of the Legislature to constitute an agency to make such rules and regulations as are necessary to accomplish the legislative intent expressed in the act, see *Snow* v. *Riggs,* 172 Ark. 835, 290

S. W. 591; *State* v. *Davis,* 178 Ark. 153, 10 S. W. (2d) 513; *Sparling* v. *Refunding Board,* 189 Ark. 189, 71 S. W. (2d) 182.

Having thus disposed of what appears to us to be the minor arguments against the validity of the act, we come now to a consideration of the question of whether such a tax may be levied at all under our Constitution. What kind of a tax is it? What is it a tax upon? Some of counsel say that it is a property tax, others that it is an occupation tax, and others that it is either a gross income tax or an occupation tax, while another says it has all the earmarks of a property tax. Counsel for appellant and those *amici curiae* supporting that view contend that it is neither a tax on property, an occupation tax, nor a tax on gross income; that it is an excise tax or privilege tax, and the argument is made with some force that it is a tax upon the right to acquire personal property by purchase for use or consumption. It is generally agreed that, unless the tax is prohibited by express language or by necessary implication in the Constitution, it is a valid levy. If it is prohibited, either expressly or impliedly, the prohibition must be found in § 5 of article 16 of the Constitution, which follows:

"All property subject to taxation shall be taxed according to its value; that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the State. No one species of property, from which a tax may be collected, shall be taxed higher than another species of property of equal value; provided, the General Assembly shall have power, from time to time, to tax hawkers, peddlers, ferries, exhibitions and privileges, in such manner as may be deemed proper; provided, further, that the following property shall be exempt from taxation: Public property used exclusively for public purposes; churches used as such; cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes; and buildings and grounds and materials used exclusively for public charity."

Decisions of courts of other States generally hold that similar provisions of their Constitutions for equality

and uniformity apply only to taxes on property, and not to excises and privileges. In 26 R. C. L., p. 225, it is said: "It is generally held that a constitutional provision requiring taxation to be equal and uniform applies only to taxes on polls and property, and has no reference whatever to excises." To the same effect see 61 C. J., p. 106. Such has been the rule in this State since the decision in *State* v. *Handlin,* 100 Ark. 175, 139 S. W. 1112, which sustained the inheritance tax as a tax on a privilege. There the court said: "If this were an attempt to tax the property of the estate, there might be some merit in the contention; but it may now be regarded as settled law that inheritance taxes are not laid upon property, but upon the privilege or right of succession to it; or, in other words, it is in the nature of excise tax, and not subject to the same tests with respect to equality and uniformity as taxes levied upon property." Citing cases and continuing: "We recognize this is true, and hold that the tax provided by this act upon the privilege of succeeding to inheritances and estates was well within the power of the Legislature to impose, being included within its expressed power: 'To tax * * * privileges in such manner as may be deemed proper'." A study of our cases on the subject will disclose that the earlier cases such as *Washington* v. *State,* 13 Ark. 752, held that the Legislature could tax only such privileges "that are ascertained and recognized to be such at the common law." This view was expanded in *Baker* v. *State,* 44 Ark. 134, arising subsequent to our present Constitution, to include those subjects that were within the police power of the State to regulate. Since the decision in *State* v. *Handlin, supra,* this court has sustained the gasoline tax as a tax on the privilege of using the public roads. *Standard Oil Co.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753. Also the Severance Tax case, *Floyd* v. *Miller Lumber Co.,* 160 Ark. 17, 254 S. W. 450, and the Gross Income Tax case, *Sims* v. *Ahrens,* 167 Ark. 557, 271 S. W. 720. Great trouble was experienced by the court in deciding the two cases last mentioned. In fact, the Severance Tax case was affirmed because a majority could not agree upon a proper construction of the Constitution, so it could not be re-

versed. It was agreed by all that the tax was not one on property. In *Sims* v. *Ahrens, supra,* Mr. Justice WOOD wrote the majority opinion on rehearing and stated: ''My conclusion of the whole matter is that there are two, and only two, limitations in our Constitution upon the power of the State to raise revenue for State purposes, namely, (1) that taxes on property must be *ad valorem,* equal and uniform, and (2) that the Legislature cannot lay a tax for State revenue on occupations that are of common right.'' It was there said that an income tax was not a tax on property or occupations of common right. In *Stanley* v. *Gates,* 179 Ark. 886, 19 S. W. (2d) 1000, a net income tax was sustained on the theory that it was an excise tax not prohibited by the Constitution. In *Hixon* v. *School District of Marion,* 187 Ark. 554, 60 S. W. (2d) 1027, an act taxing State and county warrants was sought to be sustained as an excise tax. The court refused to so decide, and held that it was a tax on property and therefore void. It was there said:

''A tax on warrants has none of the characteristics of an excise tax. There is no exact definition of excises, but ordinarily they are duties laid on the manufacture, sale or consumption of commodities, or upon certain callings or occupations, and are generally referable to the police power of the State.'' See also *Sparling* v. *Refunding Board,* 189 Ark. 189, 71 S. W. (2d) 182.

From these decisions we are bound to conclude that the tax levied by said act 233 is an excise tax or privilege tax that is not prohibited. Whether it is such a tax on the purchase or the sale, or the right to acquire personal property for use or consumption, or whether it is a tax on the transaction, it is unnecessary to determine. Whatever it is and by whatever name it may be called, its character must be determined by its incidents, and its validity must be measured by the Constitution under the rules stated. It is certain that it is not a tax levied upon any one's occupation, therefore not an occupation tax. The merchant is not taxed. He is a tax collector. The tax is required of the purchaser, and the merchant must collect and account for it. The buyer's occupation is not

taxed. It is not a pursuit or occupation to buy at retail for use or consumption.

It is also insisted that under the Constitution, article 2, § 2, providing that all men have the inalienable right of acquiring, possessing and protecting property, etc., is destroyed and taken away by this act. Such is not the case. The Supreme Court of the United States held to the contrary in *Bromley* v. *McCaughn,* 280 U. S. 124, 136, 74 L. ed. 226, 230. There the court had under consideration the constitutionality of the Federal Gift Tax Act. It was there contended that the tax was one upon an essential right inherent in property—the right to give it away—and that it was therefore a tax on the property itself and void as a direct tax. It was there said: "It is said that, since property is the sum of all the rights and powers incident to ownership, if an unapportioned tax on the exercise of any of them is upheld, the distinction between direct and other classes of taxes may be wiped out, since the property itself may likewise be taxed by resort to the expedient of levying numerous taxes upon its uses; that one of the uses of property is to keep it, and that a tax upon the possession or keeping of property is no different from a tax on the property itself. Even if we assume that a tax levied upon all the uses to which property may be put, or upon the exercise of a single power indispensable to the enjoyment of all others over it, would be in effect a tax upon property (see *Dawson* v. *Kentucky Distilleries & Warehouse Co.,* 255 U. S. 288, 65 L. ed. 638, 41 Sup. Ct. 272), and hence a direct tax requiring apportionment, that is not the case before us.

"The power to give cannot be said to be a more important incident of property than the power to use, the exercise of which was taxed in *Billings* v. *United States,* and even though differences in degree may be carried to a point where they produce distinctions in kind, the present levy falls so far short of taxing generally the uses of property that it cannot be likened to the taxes on property itself which have been recognized as direct. It falls, rather, into that category of imposts or excises which, since they apply only to a limited exercise of property rights, have been deemed to be indirect and so

valid although not apportioned." See also *State* v. *Boney,* 156 Ark. 169, 245 S. W. 315, sustaining an inheritance tax on dower.

The act under consideration is an emergency measure, specifically declared to be so, which expires July 1, 1937, unless renewed or extended. The recitation in the emergency clause discloses a grave situation with reference to the free public schools. While these considerations cannot determine the validity of the act, they may be viewed to determine the necessities out of which it arose.

Other arguments against the act are made, such as exempting certain articles of food and not others, and other incidental matters, all of which we have considered and find to be without substantial merit.

It will be noticed that § 4 of the act provides that the tax levied shall be collected beginning May 1, 1935. The injunction granted by the chancery court prevented this from being done. Section 21 of the act provides that the violation of any provision of the act shall be a misdemeanor, punishable by a fine not exceeding $1,000 or imprisonment not exceeding one year in the county jail, or both at the discretion of the court, and each day of violation is made a separate offense. The act is therefore highly penal. Section 9731, Crawford & Moses' Digest, provides: "Whenever, by the decision of any circuit court, a construction may be given to any penal or other statute, every act done in good faith in conformity with such construction after the making of such decision, and before the reversal thereof by the Supreme Court, shall be so far valid that the party doing such act shall not be liable to any penalty or forfeiture for any such act that shall have been adjudged lawful by such decision of the circuit court."

Of course the same provision would apply to the decision of any chancery court. The act has therefore been suspended during this period, and will become effective when and if the judgment of this court as here announced becomes final.

Our conclusion on the whole case is that the act is not prohibited by the Constitution, either expressly or

by necessary implication, and that its validity must be sustained.

The decree of the chancery court is therefore reversed, and the cause remanded with directions to enter a decree in accordance with this opinion.

JOHNSON, C. J. (concurring). Since a constitutional majority of the court decline to overrule *State* v. *Handlin*, 100 Ark. 175, 139 S. W. 1112, *Floyd* v. *Miller Lumber Co.*, 160 Ark. 17, 254 S. W. 450, *Sims* v. *Ahrens*, 167 Ark. 557, 271 S. W. 720, and *Stanley* v. *Gates*, 179 Ark. 886, 19 S. W. (2d) 1000, I perceive that we are bound by the doctrines therein announced and for this reason I concur in the court's view that the Sales Tax Act of 1935 is constitutional and valid. This Sales Tax Act cannot be distinguished in principle from the Income Tax Act held constitutional in *Stanley* v. *Gates, supra,* and all efforts in this respect immediately prove illogical. Were I free to follow reason and logic, I should hold that under art. 16, § 5 of the Constitution of 1874 that this sales tax act is inhibited by affirmation which implies a negation. Such was the express holding of this court in the early case of *State* v. *Ashley,* 1 Ark. 513, and adhered to and followed for three quarters of a century. This case was decided under the Constitution of 1836, but a comparison of art. 16, § 5, of the Constitution of 1874 with that of 1936 demonstrates that the former was copied from the latter except in minor details not necessary to here point out.

*State* v. *Ashley, supra,* was followed and its doctrine re-examined and approved by this court in such cases as *Colby* v. *Lawson,* 5 Ark. 303; *State* v. *Washmood,* 58 Ark. 609, 26 S. W. 11; *Baker* v. *State,* 44 Ark. 314; *Stevens and Woods* v. *State,* 2 Ark. 291; *Washington* v. *State,* 13 Ark. 752 and many other cases, until *Handlin* v. *State, supra.* This case arose under the inheritance tax statute, and the majority held the inheritance tax statute constitutional and valid, thereby, in my opinion, for the first time materially impairing *State* v. *Ashley, supra,* and all subsequent cases which followed its lead. *Floyd* v. *Miller Lumber Co., supra,* arose over an act levying a tax against the severance of natural resources and by a divided court this enactment was sustained, thereby further impairing

the line of cases heretofore cited. *Sims* v. *Ahrens, supra,* arose over an income tax statute and was sustained by a divided court, the result of which presented the anomalous situation of the court holding the act in question invalid but affirmatively deciding in advance that a proper income tax act would be approved by the court if drawn under certain specifications. Subsequently these specifications were complied with by the legislative branch of the State government, and the constitutionality of this planned income tax act was presented in *Stanley* v. *Gates, supra,* and the opinion there approved the form of the act and relied upon its previous *dictum* as to its constitutionality. Such is the history, reasoning, logic and effect of the cases heretofore referred to and cited, and they and each of them should be overruled.

Until *State* v. *Handlin, supra,* we consistently held that § 16, art. 5, of our Constitution authorized a property tax and prescribes the rules to be applied in assessing and collecting taxes on property, with the proviso that the Legislature shall have authority to levy a tax on hawkers, peddlers, ferries, exhibitions and privileges. Under settled principles of constitutional interpretation, these provisions of our Constitution should be treated as a limitation upon the powers of taxation. Since the Constitution prescribes what taxes may be levied, it impliedly prohibits any other kind of taxation not therein provided for. "To specify is to exclude" is a maxim of interpretation. The Constitution specifics what taxes may be imposed. Therefore, no taxes may be levied which are not specified.

Moreover, the line of cases last referred to should be overruled for still another reason. Fundamentally courts should be interested in realities and not nomenclatures. Realities are ignored in each of the cases referred to. An inheritance tax is a tax on property and not a hybrid tax, as decided by the court in *State* v. *Handlin, supra.* Likewise a severance tax is a tax on property, and not a cross breed tax, as decided by this court in *Floyd* v. *Miller Lumber Co., supra.* Demonstrably certain is an income tax one on property and not an excise as decided by a

majority of this court in *Sims* v. *Ahrens* and *Stanley* v. *Gates, supra.* The two last-mentioned cases are *true hybrids,* the offspring of illogic and misnomer.

The sales tax is a property tax beyond question, cavil or doubt, when measured by constitutional law and logic. The Supreme Court of the United States has so decided many, many times. The true rule is a tax on a sale of an article is a tax on the article itself, so says the highest court in the land. *Stewart Dry Goods Co.* v. *Lewis*—U. S. —55 S. Ct. 525; *Brown* v. *Maryland,* 2 Wheat. 419; *Cook* v. *Pennsylvania,* 97 U. S. 566; *Crew Levic Co.* v. *Pennsylvania,* 245 U. S. 292; *Panhandle Oil Co.* v. *Knox,* 277 U. S. 218, and *Indian Motorcycle Co.* v. *U. S.,* 283 U. S. 570.

If a property tax, concededly, the sales tax does not conform to art. 16, § 5, and therefore is null and void.

Necessity of raising revenue should never be considered so urgent as to warrant courts to either ignore or rewrite the Constitution. For seventy-five years we treated art. 16, § 5, as a limitation upon the Legislature's taxing power, and I perceive no good reason for overturning the wisdom of the ages and not only opening, but destroying the flood-gates of taxation, and I fear the ultimate results.

I was not a member of this court when the novations heretofore discussed were decided, therefore I perceive that I should, in fairness to myself, make my position clear.

Justice BAKER concurs in this opinion.