WISEMAN, COMMISSIONER OF REVENUES *v.* GILLIOZ.

4-4403

Opinion delivered July 6, 1936.

*Carl E. Bailey,* Attorney General, and *Thomas Fitz-hugh,* Assistant, for appellant.

*Hill, Fitzhugh & Brizzolara, Miles, Armstrong & Young, Fadjo Cravens* and *Harry P. Daily,* for appellees.

MEHAFFY, J. This action was begun by appellees, and appellees state that the following is a brief statement of the facts:

"The city of Fort Smith has for years been in possession of and operating a municipal water plant and system consisting of a pump station on the Poteau River; storage basins located on high tracts of land in the city, into which the Poteau River water was pumped; and a complete distribution system. It became necessary for the city to abandon the pump station on the Poteau River, due solely to the poor quality of the Poteau River water. The storage basins and distribution system were adequate. In order to secure a new and adequate supply of water, the city acquired, and became the owner of, a perpetual right-of-way approximately twenty miles long, and some 1,227 acres of land in fee, and then entered into the three construction contracts for the improvement of its real estate.

"The complaint alleges that the improvements in the aggregate really constitute one project and consisted generally of the following: the building of clay-earth dam on the city's land with concrete wing wall and cutoff walls and a natural rock and concrete spillway. The dam and spillway were built for the purpose of impounding a large lake on the city's property. Included in the improvement was the clearing and grubbing of the lake site. Other improvements included in the contracts and project were the building of a concrete intake tower in the lake above the dam, the building of concrete settling basins, stone and concrete filtration house, and clear water well on the city's land some distance below the dam, and the connection of the concrete intake tower, by means of a 27-inch pipe line, with said settling basins, filtration house, and clear water well, and the connection of all of these, by means of a 27-inch steel pipe line and cast iron pipe line, with the present storage basins and distribution system of the city of Fort Smith. The complaint alleges, and the demurrer admits, that all of said improvements were made on and under the city's land and constitute permanent structures thereon and thereto, and were made pursuant to the three construction contracts involved in this case."

The complaint then alleges the separate contracts and what each one was to furnish, or rather, what each contractor undertook to do under his contract, and then alleges: "That much of the material used for the construction of this project was earth, clay and stone taken by the contractors from the city's land. There was no separate price to be paid by the city for any material used by the contractors. The complaint alleges, and the demurrer admits, that the contractors entered into construction contracts for definite sums, by which they were to furnish the materials and labor and construct the improvements to the city's land. The complaint further alleges that the appellant herein, as Commissioner of Revenue of the State of Arkansas, is demanding that the cost of materials to the contractors be treated as 'gross proceeds' of sale of materials by the contractors to the city under the construction contracts for lump sum con-

tract prices set forth in the complaint, and is demanding that the contractors pay a retail sales tax of two per cent. thereon to the State, and that they collect same from the city as consumer.

"The complaint alleges, and the demurrer admits, that the construction contracts were all entered into before the effective date of the Sales Tax Act."

The appellant demurred, the court overruled the demurrer, and entered a decree permanently enjoining the Commissioner of Revenues from enforcing the provisions of the Sales Tax Act, from which comes this appeal.

There are but two questions for our consideration: First, was there a sale of tangible personal property, taxable under the Sales Tax Law? Second, if there was such a sale, would the collection of the tax on contracts made prior to the effective date of the law be unconstitutional as impairing the obligation of the contracts?

The appellee is correct in stating that, without regard to the precise nature of the property sold, it is certain that under the express terms of the act, the transaction must be a sale or no tax is imposed. They call attention to the case of *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. (2d) 91, and state that it is there expressly held that § 4 of the act levies the tax. Section 4 reads as follows: "Beginning May 1, 1935, there is hereby levied upon and shall be collected from all retail sales, as herein defined, a tax of two (2%) per centum of the gross proceeds derived from said sales.

"The tax imposed by this section shall apply to:

"(a) All sales at retail of tangible personal property.

"(b) All retail sales at or by restaurants, cafes, cafeterias, hotels, dining cars, auctioneers, photostat and blue-print sales, funeral directors, and all other establishments of whatever nature or character selling for a consideration any property, thing, commodity, and/or substance.

"(c) All sales of admission or admittance to athletic contests, theaters, both motion picture and stage per-

formances, circuses, carnivals, dance halls and other places of amusement.

"(d) All retail sales of electric power and light, natural gas, water, telephone use and messages and telegrams.

"(e) Where there are adjoining cities or incorporated towns which are separated by a State line, the taxes and licenses to be paid by dealers in and on sales and services in such adjoining city or incorporated towns on the Arkansas side of the State line shall be at the same rate as provided by law in such adjoining State, if any, not to exceed the rate provided in this act."

It will be observed that paragraph (b) of § 3 defines the term "sale at retail" to mean any transaction transfer, exchange, or barter by which is transferred for a consideration the ownership of any personal property, thing, commodity or substance, or the furnishing or selling for a consideration any of the substances or things hereinafter designated and defined, when such transfer, exchange or barter is made in the ordinary course of the transferor's business, and is made to the transferee for consumption or use, or for any other purpose than for resale.

Appellees cite and rely on *State* v. *J. Watts Kearney & Sons*, 181 La. 554, 160 So. 77, as showing that the contractors are not dealers. The question in that case was whether they were wholesale or retail dealers. The State was collecting a retail tax. It contended that it was entitled to collect both a wholesale and retail tax. The court in that case said in speaking of the contractor:

"He is not a dealer, or one who habitually or constantly, as a business, deals in and sells any given commodity. He does not sell cement and nails and lumber."

The court, in the above case, stated also that "sales to contractors are sales to consumers, and for this very reason the Legislature did not include contractors and sub-contractors in the term 'dealers for resale' as used in § 7, act No. 205 of 1924, but has placed them in an entirely different classification in § 24 of that act."

Section 24 of the act provides: "That every individual firm, company or corporation carrying on the pro-

fession or business of contractor, shall pay a license based upon the gross annual receipts of said business, which licenses shall be fixed and graded, etc.''

The Chief Justice O'NIELL wrote a dissenting opinion in the case above in which he said: ''The main question in these cases is whether the business of selling building materials in very large quantities to contractors and sub-contractors, and to municipalities and municipal boards and commissions, should be classed as a wholesale business or as a retail business in determining the rate of the license tax to be levied upon the business.''

We have no such question here. The appellees contend that they did not make a sale, and that, therefore, they are not liable to pay any tax. In the case above referred to, on rehearing, not only the Chief Justice dissented, but two other judges. The above case is construing the Louisiana statute, and that statute is different from ours. However, as we have already said, the contractors in that case did not contend they were not liable for a tax, but that they should be taxed as retailers and not as wholesalers.

Appellees next refer to the case of *Bradley Supply Co.* v. *Ames*, 359 Ill. 162, 194 N. E. 272, a case relied on by appellants. This is an Illinois case, and the appellees argue that a contractor who builds and constructs houses and other improvements to real estate is not a dealer or a merchant. That on the contrary he is a builder. They say he does not sell the houses; that he constructs or erects them, and that he most certainly does not sell the lime, cement, lumber and steel which he uses and consumes in fabricating the completed structure which he erects upon and under the owner's land.

Of course, one would not say that the contractor sold the house, but unquestionably he sells the material that goes into the house. If one should contract to furnish the material and labor and build a house for the owner, he would necessarily estimate or calculate the value of the material furnished and the owner would have to pay for it. The contractor would sell this to the owner. The material would belong to the contractor before the contract was made, or he would purchase it from material

furnishers. Our statute says that sale at retail means any transaction, transfer, exchange or barter by which is transferred for a consideration the ownership of any personal property, thing, commodity or substance, or the furnishing or selling for a consideration any of the substances and things, etc. If the contractor owned this material and sold it to the city of Fort Smith, will it be contended that it was not transferred to the city of Fort Smith for a consideration? And if it was so transferred, it is subject to the sales tax under our statute.

It makes no difference that we would not say of a builder that he sold the house, or sold the lumber, shingles or nails, but that is, in fact, what he does. It is just as much a sale of the material as it would be if the contractor would agree on the price of the material and labor separately.

It seems to us that the only question is whether there was a transfer to the city for a consideration. If so, it comes within the terms of § 3 of the sales tax law.

If there was a transfer of ownership, as mentioned in § 3 of the act, there was a sale to the city upon which the tax must be paid, unless the appellees were entitled to exemption.

"In all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to exemption, bringing himself clearly within the terms of such conditions as the statute may impose.

"An intention on the part of the Legislature to grant an exemption from the taxing power of the State will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute, charter, or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption

from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed, and cannot be made out by inference or implication, but must be beyond reasonable doubt. In other words, since taxation is the rule and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms; it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing is upon him who claims it." *Wiseman v. Madison Cadillac Co.*, 191 Ark. 1021, 88 S. W. (2d) 1007.

Appellees have a good deal to say about a dealer, but as to whether this is a sale by retail from the contractor to the city, must be determined by the sales tax law. That law provides: "The term 'retailer' shall mean any person, persons, partnership, firm or corporation, engaging in sale at retail."

"Sale at retail" is defined in the law as any transaction, transfer, or exchange by which is transferred for a consideration the ownership of personal property, etc. And it makes no difference what the seller or buyer may be called, if it comes within the terms of this law.

The city of Fort Smith unquestionably acquired this property from the contractor, and acquired it for the purpose of consumption and use, and not for resale.

It is argued by appellees that the contractor was not selling any property. They refer to the Louisiana case as holding that the contractor does not sell cement, gravel or sand, and they say that no title to personal property ever passed to the city. The title to the property was in the contractor, and the city of Fort Smith acquired title to that property. It acquired it for a consideration. Merely because the price of the property and the price of labor was estimated together, does not in any way affect the transaction so as to prevent its being a transfer of personal property to the city.

The case of *Wiseman, Commissioner, v. Arkansas Wholesale Grocers Ass'n, ante* p. 313, 90 S. W. (2d) 987, involved the question of sales tax on wrapping paper,

paper bags and twine sold at wholesale to merchants, and the merchants used them in wrapping up, tying, and as containers, for articles of merchandise purchased from them. This court said: "In the instant case, however, it is conceded that there is no fixed price for the above-mentioned articles. These articles are not only used by the merchant in the conduct of his business, but they often carry advertisements."

We also said: "In construing statutes it is the duty of the courts to give them a reasonable, sensible interpretation, and, where the language is clear and unambiguous, it is only for the court to obey and enforce the statutes. *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282, 260 N. W. 165, 98 A. L. R. 827."

Appellees contend that the sales tax act cannot operate retroactively and impose a tax upon a given transaction not taxable when it occurred. It is true we said in *Wiseman* v. *Phillips,* 191 Ark. 63, 84 S. W. (2d) 91, that the act would become effective when, and if, the judgment of this court as there announced becomes final. That was true in that case. Until it became final no penalties could attach, but we were construing § 9731 of Crawford & Moses' Digest, which reads as follows: "Whenever, by the decision of any circuit court, a construction may be given to any penal or other statute, every act done in good faith in conformity with such construction after the making of such decision, and before the reversal thereof by the Supreme Court, shall be so far valid that the party doing such act shall not be liable to any penalty or forfeiture for any such act that shall have been adjudged lawful by such decision of the circuit court."

It will be observed that the act provides: "Every act done in good faith in conformity with such construction after the making of such decision, and before the reversal thereof by the Supreme Court, shall be so far valid that the party doing such act shall not be liable to any penalty or forfeiture for any such act that shall have been adjudged lawful by such decision of the circuit court."

Of course the act was effective as to the parties of that suit when the decision became final, but the statute says "acts done in good faith" before the reversal by the Supreme Court. All the contracts of the appellees were made after the reversal. The case was reversed on June 3d, and the contracts of appellees were all made after June 3d. How can it be said that they were made in good faith, relying on the construction of the chancery court, after it had been reversed by the Supreme Court?

What the parties did, according to their own statements, was to make contracts after the case had been reversed by this court. To be sure, it did not become final immediately, but it was notice to the appellees that the case was reversed, and it could hardly be said that one could act in good faith, relying on the decision of the chancery court, after it has been reversed by this court.

Besides that, there had been no delivery of the property, the titles to the materials had not passed, but they were delivered long after the decision of this court became final.

If appellees' contention is correct, then the State would be powerless to impose a tax or to increase its taxes, although it might become necessary to do so, so as to affect contracts made before a law became effective. One might have a valid contract, might have a note, the payment of which was secured by mortgage on large property, and no matter how necessary it became for the State to increase its taxes in order to meet its obligations, such increase would be void as to these contracts, if the contention of appellees is correct.

Increasing taxation or adding a new tax does not impair the obligation of a contract. It is true that the law, as it existed at the time the contract was made, is a part of the contract, but so is the law with reference to the State's power of taxation. If this were not true, all contracts with reference to real estate would become void as to the tax upon the creation of an improvement district, or the provision for a road tax, or any other tax. The State has the power to tax, and there is no contention made in this case that the tax is unreasonable, or that it is void for any reason, except that appellees say

that it cannot apply to them because their contract antedated the law.

There is no allegation and no showing in the complaint that the appellees acted in good faith in conformity with the construction of the chancery court. We think, therefore, that the demurrer should have been sustained, and the decree of the chancery court is reversed, and remanded, with directions to sustain the demurrer.

McHANEY, BUTLER and BAKER, JJ., dissent.