Larry GLEGHORN, et ux *v.* FORD MOTOR CREDIT COMPANY

87-66                                    737 S.W.2d 451

Supreme Court of Arkansas
Opinion delivered October 12, 1987
[Rehearing denied November 23, 1987.*]

*Purtle, J., not participating; Hays, J., would grant rehearing.

*David E. Smith* and *Meredith Wineland,* for appellants.

*Smith, Smith & Duke,* by: *W.R. Nixon, Jr., P.A.,* for appellee.

DAVID NEWBERN, Justice. Larry and Linda Gleghorn sued Ford Motor Credit Company (FMC) seeking the constitutional penalty of double interest on a contract they alleged to be usurious. Summary judgment was granted to FMC. We must reverse and remand the case because the motion for summary judgment was not supported as required by Ark. R. Civ. P. 56(c).

The Gleghorns purchased a Ford Bronco. Their contract provided an interest rate of 13.9% per annum on the unpaid balance. The contract was executed after a chancery court had interpreted Amendment 60 to the Arkansas Constitution as permitting an interest rate as high as 17%. However, the contract was executed before this court reversed that decision, and held that Amendment 60 would permit no interest rate higher than 5% above the federal discount rate. *Bishop* v. *Linkway Stores, Inc.,* 280 Ark. 106, 655 S.W.2d 426 (1983). Apparently 13.9% was more than 5% above the federal discount rate on the date in question, as FMC did not contend to the contrary. Rather, FMC answered the Gleghorns' complaint by alleging that the contract had been made in good faith in conformity with the chancery court decision.

FMC moved for summary judgment and attached a copy of the chancellor's ruling in the *Bishop* case, arguing that there was no remaining genuine issue of material fact because Ark. Stat. Ann. § 1-205 (Repl. 1976) provides:

> Whenever, by the decision of any circuit court, a construction may be given to any penal or other statute, every act done in good faith in conformity with such construction after the making of such decision, and before the reversal thereof by the Supreme Court, shall be so far valid that the party doing such act shall not be liable to any penalty or forfeiture for any such act that shall have been adjudged lawful by such decision of the circuit court.

Although the statute refers only to decisions of circuit courts, it

applies equally with respect to decisions of the chancery courts. *See Wiseman* v. *Phillips*, 191 Ark. 63, 84 S.W.2d 91 (1935). The Gleghorns have not questioned whether the reference in the statute to "construction . . . given to any penal or other statute," includes construction given to a constitutional amendment.

■ The evidence submitted in favor of granting a motion for summary judgment is to be viewed most favorably to the party resisting the motion with doubts being resolved against the moving party. *Township Builders, Inc.* v. *Kraus Construction Co.*, 286 Ark. 487, 696 S.W.2d 308 (1985); *Leigh Winham, Inc.* v. *Reynolds Insurance Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983).

Attaching a copy of the chancellor's decision in the *Bishop* case to its motion for summary judgment demonstrated that the contract under consideration here was "in conformity" with that decision, or at least not in violation of it. However, nothing presented by FMC addressed that part of the statute requiring that the entering into the contract was an "act done in good faith" in conformity with that decision. As the appellants point out, the burden is on the moving party to establish that its motion for summary judgment supports a ruling that there is no remaining factual issue. *Lee* v. *John Doe*, 274 Ark. 467, 626 S.W.2d 353 (1981). It was not done in this case.

In the first point addressed in its brief, FMC argues that the contract need only be in conformity with the prior decision of the chancery court. However, in oral argument, counsel for FMC agreed that the "in good faith" language of the statute need not be ignored by us, but must be reckoned with. Counsel pointed out that the Gleghorns, upon seeking rehearing of the circuit judge's decision in this case, placed in the record testimony from another trial given by a Mr. Halstein, an FMC official, showing that FMC acted in good faith. While we find that Mr. Halstein testified about a number of matters concerning contracts between Arkansas consumers and FMC, and noted that the contracts had been revised after the chancellor's decision in the *Bishop* case had been reversed, nothing Mr. Halstein said addressed whether this contract, or any other contract, was conformed to the chancellor's decision in good faith.

FMC also argues under its second point that we should not

read into the statute words which would require a showing that there was "reliance" upon the chancellor's order. The argument seems to be that as long as the contract was entered in good faith and conformed to the chancellor's decision, that is enough, and that FMC is not required to show a good faith reliance on the decision in order to avoid the penalty.

In *Wiseman v. Gillioz*, 192 Ark. 950, 96 S.W.2d 459 (1936), taxpayers sought an injunction against the collection of taxes levied by the commissioner of revenues who demurred to the complaint. The taxes in question were the same as those of which the chancellor in *Wiseman v. Phillips, supra*, had enjoined collection; a decree which was then reversed in this court. The taxpayers in *Wiseman v. Gillioz, supra*, contended they had relied on the chancellor's decision in *Wiseman v. Phillips, supra*; however, the pleadings apparently showed that all the contracts in question were made after the reversal. In holding that a demurrer should have been sustained we said:

> Of course the act was effective as to the parties of that suit when the decision became final, but the statute says, "acts done in good faith" before the reversal by the Supreme Court. All the contracts of appellees were made after June 3d. How can it be said that they were made in good faith, relying on the construction of the chancery court, after it had been reversed by the Supreme Court?

> What the parties did, according to their own statements, was to make contracts after the case had been reversed by this court. To be sure, it did not become final immediately, but it was notice to the appellees that the case was reversed, and it could hardly be said that one could act in good faith, relying on the decision of the chancery court, after it has been reversed by this court. [192 Ark. at 950, 96 S.W.2d at 463].

It is thus clear that although the statute does not say "act done in good faith reliance upon such construction," this court has inferred that the words "act done in good faith in conformity with such construction" mean the same thing. The remaining genuine issue of material fact then is whether the act of FMC in charging 13.9% interest on this contract was done in good faith reliance on the chancellor's decision in the *Bishop* case.

▉ Statements in the dissenting opinion show a misunderstanding of summary judgment procedure. It is the obligation of the moving party to show that there is no remaining genuine issue of material fact. Ark. R. Civ. P. 56(c). Until the moving party has met that obligation, the failure of the responding party to make a showing to the contrary, in this case a showing of "bad faith," is irrelevant. The dissenting opinion also suggests it is a waste of time to send the case back only to have the motion renewed with a proper showing of good faith reliance on the statute. While we might suspect, perhaps through clairvoyance, that there is evidence available to show good faith reliance on the statute, it is not yet before us, and we cannot set a precedent of reaching conclusions based upon nothing. The dissenting opinion may be correct in recognizing that other contracts entered by FMC before the reversal are irrelevant to the question of good faith, but it fails to recognize the irrelevancy to the issue before us of the fact that FMC revised its contracts after we reversed the chancellor's decision.

Reversed and remanded.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority court reverses this case based upon its belief that a genuine issue of material fact exists that must be resolved below. With all due respect, I could not disagree stronger, and would suggest if this is not a case for summary judgment, then none exists. Perhaps, stung a bit by this dissent, the majority opines I misunderstand summary judgment procedure. While not a professed expert on the subject, I would hope our main difference in this matter is one more on the law and what evidence we believe is necessary when determining if a material factual dispute exists than it is one concerning a misunderstanding or ignorance of summary judgment procedure. Be that as it may, the reader may decide.

In this appeal, we received skillful arguments from both sides; so skillful, I believe, that this court has bought a red herring. For example, Ark. Stat. Ann. § 1-205 (Repl. 1976) is the controlling law here when determining whether a material fact issue exists and whether summary judgment should have been granted below. Under that statute, when a district court construes any statute, including a penal one, a person who acts in good faith

conformity with that court's statutory construction cannot be liable for any penalty proscribed by that statute. That is exactly what occurred here. On March 12, 1983, Judge Bullion, in construing Amendment 60 to the Arkansas Constitution, ruled the lawful interest rate on consumer contracts is 17% per year, regardless of what the Federal Reserve Discount Rate might be. On July 1, 1983, appellants purchased a vehicle from One Moore Ford, signing a retail installment contract which indisputably conformed with Judge Bullion's March 12th ruling. On July 11, 1983, this court issued an opinion, reversing Judge Bullion's decision and declaring the maximum amount of interest a lender can charge on consumer loans is the lesser of 17% or 5% above the Federal Reserve Discount Rate. *Bishop* v. *Linkway Stores, Inc.*, 280 Ark. 106, 655 S.W.2d 426 (1983).

The foregoing evidence encompasses the only relevant events necessary to decide this case. Nonetheless, appellants seize on the term "good faith" employed in § 1-205, and, as one would expect, they argue proof of good faith necessarily requires a factual determination, which has not been resolved in this case. Appellants then proceed to weave their own good faith issue by introducing consumer contracts appellee used with *other customers* and *executed before* Judge Bullion's decision. The purpose? The appellants say those other contracts show the appellee was not really relying on Judge Bullion's decision when entering into its contract with them because it employed the same consumer contract both before and after Bullion's decision. Assuming *arguendo* this to be true, I fail to see what difference any of that makes to the case at hand.

Clearly, the parties' contract here wholly conformed with Judge Bullion's decision and the parties entered into their contract *after* the Bullion decision and before it was reversed. Appellants submit not one bit of evidence that bad faith was involved on appellee's part. The appellee, on the other hand, did submit all that was necessary to support its motion and to meet its burden: (1) the parties' contract, which was dated and contained all the necessary information concerning their transaction and (2) a copy of Judge Bullion's March 12, 1983, decision. All the trial court had to do was read the pleadings, attachments, motions and responses to decide if the parties' contract conformed with Judge Bullion's decision.

The consumer contracts the appellants argue in this cause, I submit, have no relevance and do nothing more than divert this court's attention from the real, material issue involved: whether the contract now before us is in conformity with Judge Bullion's construction of Amendment 60. Even appellants do not argue their contract failed to conform; they merely contend "the [trial] court was in no position to state appellee acted in good faith upon relying on the [chancellor's] decision."

The majority dilutes the importance of whether the parties' contract was in conformity with Judge Bullion's decision, but rather returns this case to determine appellee's mind set at the time the contract was signed. I simply fail to see the significance or relevance of such an endeavor. On remand, the trial court will ask, "Did you, appellee, rely upon Judge Bullion's March 1983 decision when executing the contract with appellants, and did you do so in good faith?" Of course, the answer will be yes. Besides being a waste of judicial time, I believe it is entirely irrelevant. After the appellee met its burden, the appellants' so-called good-faith reliance issue, in my opinion, was (and is) in reality a non-issue—or at least an immaterial one.

Appellee contracted with appellants after and in conformity with Judge Bullion's decision, and immediately reformed the contract to conform with the supreme court's decision overturning the lower court's decision. There being no dispute to these facts, this court should affirm the trial court's granting of summary judgment, barring the penalties provided for usurious contracts under Amendment 60.

HICKMAN and HAYS, JJ., join in this dissent.