Rosie P. ADAMS, Individually and as Administratrix of the Estate of Bill D. Adams, Deceased and B-R Adams, Inc. *v.* FIRST STATE BANK, Beebe, Arkansas

89-143                                                   778 S.W.2d 611

Supreme Court of Arkansas
Opinion delivered October 30, 1989

*Hopkins & Erwin, P.A.*, by: *Joseph M. Erwin*, for appellant.

*Friday, Eldredge & Clark*, by: *William H. Sutton* and *Kevin A. Crass*, for appellee.

JOHN I. PURTLE, Justice. This is an appeal from a decision of the White County Circuit Court granting summary judgment to the appellee, First State Bank of Beebe, in an action for a wrongful set-off of the appellant's bank accounts and a wrongful dishonor of the appellant's checks. The appellant presents three arguments for reversal: (1) the trial court erred in holding that Ark. Code Ann. § 28-50-114 (1987) is inapplicable to the present case; (2) the trial court erred in finding that it was not obvious to the appellee that the accounts in question were fiduciary accounts; and (3) the trial court erred in finding that the bank did not exercise bad faith in claiming a set-off in the accounts. For the reasons stated below, we find that no reversible error was committed by the trial court.

The appellant, Rosie P. Adams, and her husband, Bill D. Adams, operated a truck stop and a connected restaurant. In 1984, Bill D. Adams borrowed money from the appellee bank in his capacity as owner of the truck stop and operator of the restaurant. Both Adams and his wife signed as guarantors on the notes. After Bill D. Adams committed suicide in December 1986, the appellant was appointed administratrix of her husband's estate. The bank then filed a claim against the estate for collection on the notes. The January 1987 payments were not made on time.

The appellant's attorney sought and obtained the approval of the probate court for a loan modification agreement, entered upon by the appellant and the appellee on April 10, 1987. That agreement provided that the loans were to be an obligation of the estate as well as of the appellant. Some payments were made following execution of the agreement, but they were not timely.

The May payments were not received by the appellee until June 15, 1987; no further payments were made after that date. In late August 1987, the bank became aware that the businesses operated by the appellant were being closed. The bank also learned that the appellant was attempting to transfer $15,000 from the administratrix's account to that of her attorneys. The appellee refused to make the transfer, claiming impairment of security, and offset the balance of the appellant's account against the amount owed. After exercising its right of set-off on August 24, 1987, all presented checks drawn on the appellant's accounts were dishonored.

In part, the loan modification agreement between the parties provides:

> Your [*i.e.*,the appellee's] right to setoff will not apply to an account or obligation if it is obvious that my [*i.e.*, the appellant administratrix Rosie P. Adams'] rights in the obligation are solely as a fiduciary for another, or to an account which, by its nature and applicable law . . . must be exempt from the claims of creditors.

> Your right to setoff may be exercised upon default (except when prohibited by law):

> (1) without prior demand or notice; and (2) without regard to the exercise or value of any property securing this note; and (3) without regard to the number of credit standing of any other persons who are obligated on this note.

> You will not be liable for wrongful dishonor of a check or other requests for payment when there is insufficient funds in the account (or other obligation) to pay such requests arising as a result of your exercise of this right of setoff. I agree to hold you free from liability from the claims of any person arising as a result of your exercise of this right.

The businesses were operated out of the administratrix's account and all types of expenses were paid from it. The appellant admitted that, in transferring the money to her attorney's account, she was trying to place the money out of the appellee bank's reach. After the appellee exercised its right of set-off and dishonored the checks, the appellant filed a complaint for dishonor and wrongful set-off, praying for compensatory and punitive damages on the grounds of bad faith.

Rosie P. Adams, as administratrix of the estate of Bill D. Adams, filed a motion for partial summary judgment against the bank for offsetting the accounts of a fiduciary in violation of both the law and the agreement between the parties. The bank filed a motion for summary judgment, alleging that by law it had the right to offset the accounts. The trial court granted the appellee's motion.

The first argument for reversal is that the court erred in finding that Ark. Code Ann. § 28-50-114 (1987) was inapplicable to the facts in the present case. This provision of the code reads as follows:

> (a) No execution shall issue upon nor shall any levy be made against any property of the estate under any judgment against a decedent or a personal representative.

> (b) However, the provisions of this section shall not be construed to prevent the enforcement of mortgages, pledges, or liens upon real or personal property in an appropriate proceeding.

As noted earlier, the modification agreement between the parties was obtained by the appellant's attorney with the approval of the probate court. The contract provided that the appellee could offset against any accounts which were not entirely fiduciary in character. This part of the contract, excluding the right of set-off, was made applicable to accounts that were obviously solely fiduciary in nature.

In reaching the decision that the statute did not apply in this case and that it was not obviously a fiduciary account, the trial court considered such matters as the appellant having operated the businesses out of the estate account despite the fact that a business account had been established prior to the death of Mr.

Adams. Suppliers and employees, as well as other business expenses, had been paid from the estate account. Further, the estate was an obligor on the debt, and claims against the estate had been filed by the appellee bank.

There is no dispute that the note payments were in default. The modification agreement provided that the bank, upon default, could exercise its right of set-off without prior demand or notice.

■ The appellant argues that, because the accounts were assets of the decedent's estate, the probate court rather than the circuit court had jurisdiction over the funds. While it is true that probate courts have jurisdiction over estate funds, circuit courts are not prevented from using transactions involving an estate as evidence in deciding other matters properly before them.

The circuit court here did not make a decision based upon matters subject to probate court jurisdiction; instead, it relied on probate matters as evidence in reaching its decision to grant summary judgment. Under the facts of this case, we are unable to find error in the trial court's decision that Ark. Code Ann. § 28-50-114 was inapplicable.

The appellant next argues that the court erred in finding that it was not obvious that the accounts named "Adams Enterprises" and "Rosie P. Adams, administratrix of the estate of Bill D. Adams, deceased," were solely fiduciary when the appellee had actual and constructive notice of their fiduciary nature. The appellant chose to operate the businesses through the estate account. The bank had actual knowledge of the purpose of the account when it was established. Moreover, it had knowledge of the day-to-day operation of the businesses by means of the presentation and payment of checks or drafts for supplies and other expenses.

■ Although the name of the account may clearly suggest a fiduciary character, it is equally clear that the accounts were not solely fiduciary. The appellee's observation of account activity, for instance, suggested another conclusion. From the facts before the judge, we cannot say that he was clearly erroneous in holding that the accounts were not solely fiduciary. Therefore, the bank had a right to offset the funds in these circumstances.

The final question presented is whether there were material issues of fact to be determined by a jury. The complaint alleged that the bank acted in bad faith. Arkansas Code Annotated § 4-1-203 (1987) states: "Every contract or duty within this subtitle imposes an obligation of good faith in its performance or enforcement." Good faith is defined by Ark. Code Ann. § 4-1-201(19) (1987) as "honesty in fact in the conduct or transaction concerned."

The facts of this case clearly reveal that both the appellant and the appellee were reaching out to help themselves in any manner legally possible at the time. The appellant correctly argues that it is prejudicial error to grant a motion for summary judge when an issue of material fact exists. *Wolner* v. *Bogaev*, 290 Ark. 299, 718 S.W.2d 942 (1986). Also, generally speaking, the question whether a party has acted in good faith in a commercial transaction is a matter of fact to be determined by the jury. *Gleghorn* v. *Ford Motor Credit Co.*, 293 Ark. 289, 737 S.W.2d 451 (1987).

The loans were in default at the time the appellee exercised the set-off. When construing the meanings of "good faith" and "honesty," we must of necessity employ a subjective test. For a case concerning similar issues, see *Farmers Cooperative Elevator, Inc.* v. *The State Bank*, 236 N.W.2d 674 (Iowa 1975).

The appellee claimed that it was concerned about its security and that it believed it had the right to set-off. We have nothing in the record directly contradicting the allegation of the bank that it was not acting in anything other than good faith. It can be seen that the appellee was attempting to rely on the agreement in its actions.

In *Gleghorn*, supra, we reversed and remanded the trial court's order granting a motion for summary judgment. However, the crux of that case was an allegation that the appellants had relied upon a decision of another chancery court in forming the disputed contract. The *Gleghorn* decision simply stated that there was nothing in the record to indicate that the appellants had relied upon the other chancellor's decision, which was attached to their brief. The appellants alleged that they relied on the opinion to show that they had "acted in good faith."

■ The long-established rule of this court is that evidence submitted in favor of granting a motion for summary judgment must be viewed most favorably to the party resisting the motion. *Gleghorn*, supra. The decision of the trial court is affirmed.