The Honorable James C. Allen State Representative 4005 Malvern Road Hot Springs, Arkansas 71901
Dear Representative Allen:
This is in response to your request for an opinion on several questions involving the Arkansas Gross Receipts Tax Act of 1941, which is codified at Arkansas Code of 1987 Annotated 26-52-101, et seq. Your questions are restated and answered in the order presented.
(1) Is Investment Supply, Inc. an initial taxpayer in its contracting function or is it a tax collector?
You state in your correspondence that Investment Supply, Inc. is a qualified contractor as defined in regulations issued pursuant to the Gross Receipts Tax Act ("Act"). A.C.A. 26-52-103(a)(9) states as follows:
 `Consumer' or `user' means the person to whom the taxable sale is made or to whom taxable services are furnished. All contractors are deemed to be consumers or users of all tangible personal property including materials, supplies, and equipment used or consumed by them in performing any contract, and the sales of all such property to contractors are taxable sales within the meaning of this act.
Of additional relevance to this question is A.C.A. 26-52-307 which states:
 Sales of service and tangible personal property including materials, supplies, and equipment made to contractors who use them in the performance of any contract are declared to be sales to consumers or users and not sales for resale.
The foregoing provisions clearly indicate that contractors are "consumers or users" who pay the tax as purchasers, and not sellers who collect the tax levied from the purchaser. (A.C.A.26-52-508). This will apply to the company in question, if indeed it is a "contractor" under 26-52-103(a)(9). See also attached copies of pertinent regulations issued by the Commissioner of Revenues of the Department of Finance and Administration.
(2) Is the Sales Tax auditor legally and morally bound to report items incorrectly reported by the company both for and against the company or can the auditor list only items against the company and ignore finding for the company?
While the Director of the Department of Finance and Administration has a duty under A.C.A. 26-18-301(a)(3) to "[a]udit and properly determine and compute the state tax payable by any taxpayer subject to taxation under any state tax law," the ultimate burden with respect to establishing the existence of an overpayment clearly rests with the taxpayer. See A.C.A. 26-18-301(a)(i),26-18-404, 26-18-507. These provisions set forth the procedures to be followed in seeking relief from a proposed assessment and in filing an amended return or verified claim for credit or refund. If an overpayment is not included in the auditor's report, this fact must be brought to the auditor's attention and/or the above procedures must be followed in order to avoid paying the tax.
(3) Can the company be held liable for the extra 1% sales tax on contractors that were signed prior to the date on which the 4% sales tax went into effect?
The Arkansas Supreme Court has stated on at least one occasion that a tax increase may be applied to contracts entered before the increase is effective. Wiseman v. Gillioz, 192 Ark. 950, 96 S.W.2d 459
(1936). The Court stated the following in Wiseman,192 Ark. at 958-959, in rejecting appellees' argument that a tax did not apply to their contracts which were entered prior to the effective date of the act imposing the tax:
 If appellees' contention is correct, then the State would be powerless to impose a tax or to increase its taxes, although it might become necessary to do so, so as to affect contracts made before a law became effective. . . . Increasing taxation or adding a new tax does not impair the obligation of a contract. It is true that the law, as it existed at the time the contract was made, is a part of the contract, but so is the law with reference to the State's power of taxation. If this were not true, all contracts with reference to real estate would become void as to the tax upon the creation of an improvement district or the provision for a road tax, or any other tax. The State has the power to tax, and there is no contention made in this case that the tax is unreasonable, or that it is void for any reason, except that appellees say that it cannot apply to them because their contract antedated the law.
This case has been neither reversed nor modified.
Act 108 of the First Extraordinary Session of 1983 should, however, also be noted in this regard. Sections 1 through 3 of Act 108 state as follows:
 SECTION 1. Tangible personal property which becomes a recognizable part of a completed structure or improvement to real property and which is purchased for use or consumption in the performance of construction contracts shall be exempt from any additional Gross Receipts Tax or Compensating (Use) Tax levied by the 74th General Assembly during the First Extraordinary Session, 1983, when the construction contract for which the property was purchased is entered into prior to the effective date of the Act levying an effective date of the Act levying an additional Gross Receipts Tax or Compensating (Use) Tax.
 SECTION 2. For the purposes of this Act "construction contract" means a contract to construct, manage or supervise the construction, erection, or substantial modification of a building or other improvement or structure affixed to real property. The term "construction contract" shall not mean contract to produce tangible personal property.
 SECTION 3. The exemption provided by this Act shall apply to tangible personal property purchased prior to January 1, 1989. This exemption shall not apply to cost plus contracts which allow the contractor to pass any additional tax onto the principal as a part of the contractor's costs.
The applicability of the foregoing provisions will, of course, depend upon the particular facts involved.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
GROSS RECEIPTS TAX REGULATIONS
Pursuant to the Authority vested in the Commissioner of Revenues by the following enactments of the Arkansas General Assembly:
 1. Act 131 of 1935; 2. Act 386 of 1941; 3. Act 78 of 1949; 4. Act 265 of 1963; 5. Act 5 of 1968; 6. Act 214 of 1971; 7. Act 68 of 1973; 8. Act 516 of 1973; 9. Act 800 of 1975; 10. Act 54 of 1979; 11. Act 109 of 1979; and 12. Act 401 of 1979, as amended, and
in compliance with 3 of Act 434 of 1967 and Act 583 of 1973, the Commissioner of Revenues of the Arkansas Department of Finance and Administration, with the approval of the Governor, does hereby promulgate the following rules and regulations for the enforcement and administration of Act 386 of 1941 (as amended).
GR-1. EFFECTIVE DATE: All regulations previously promulgated by the Commissioner of Revenues for purposes of enforcing or implementing the Arkansas Gross Receipts Tax Act of 1941 (as amended) are hereby specifically repealed as of the effective date of these regulations. These regulations shall be effective from and after midnight, December 31, 1986.
GR-2. PURPOSE OF THE REGULATIONS: The following regulations are promulgated to implement and clarify the gross Receipts Tax Act as it has been amended. All persons affected by or relying upon these regulations are advised to read them in their entirety because the meaning of the provisions of one regulation may depend upon the provisions contained in another regulation.
GR-3. DEFINITIONS: For purposes of these regulations, unless otherwise required by their context, the following definitions apply: A. Commissioner: The term "Commissioner" means and refers to the Commissioner of Revenues of the State of Arkansas, or any of his duly authorized agents. B. Sale: The term "Sale" means any transaction resulting in the transfer of either the title or possession, for a valuable consideration, of tangible personal property or services regardless of the manner, method, instrumentality or device by which such transfer is accomplished. The term "Sale" includes the exchange, barter, lease or rental of tangible personal property or services. However, a financing arrangement which only gives a lendor a security interest in tangible personal property will not subject such lendor to the tax, if, prior to such financing arrangement, either the Arkansas Gross Receipts or Compensating Tax has been paid on the purchase price of the tangible personal property by one of the parties to the financing arrangement. K. The term "Person" means and includes individuals, fiduciaries, corporations, partnerships, joint ventures, associations mutual or otherwise, estates, trusts, receivers, trustees appointed by any State of Federal Court, this State, any county, city, municipality, school district, or any other political subdivision or combination acting as a unit, in the plural or singular number. L. The term "Contractor" shall mean any person who contracts or undertakes to construct, manage or supervise the construction, erection or substantial modification of any building or other improvement or structure affixed to real property. Persons who construct items or tangible personal property are not contractors. (See GR-21.) M. Retailers Permit: "Retailers Permit" means and refers to the retailers permit as required under 12 of Act 386 of 1941, as amended. N. Monthly Reports: "Monthly Reports" means monthly reports as required by Act 386 of 1941, as amended.
GR-4. AMOUNT AND NATURE OF TAX: The tax levied by Act 386 of 1941 (as amended) is 4% of the gross receipts or gross proceeds derived from all sales within Arkansas of tangible personal property and certain services and admission fees upon which the tax is imposed.
GR-5. TAX IMPOSED UPON SALE AND NOT PROPERTY — INTERSTATE AND INTRASTATE SALES: A. The Arkansas gross receipts tax is a tax imposed upon the sale of tangible personal property and not the property itself. Thus, when a sale of tangible personal property occurs in Arkansas, a taxable event has occurred and the tax should be collected and remitted. When tangible personal property is sold to a consumer and the seller thereof is engaged in an established business within Arkansas and delivery is made within Arkansas transferring either title or possession of the property, such sale is intrastate and subject to the gross receipts tax irrespective of the fact that the seller may not have in stock certain goods, wares and merchandise for the immediate delivery which requires the vendor to order same for direct shipment at or from a source outside this State. B. Sellers must collect and remit the tax when the sale of property takes place within the State of Arkansas even though the property may be delivered outside Arkansas as an accommodation or convenience for the consumer's benefit. The fact that the purchaser of property is also a common carrier and the property is to be shipped outside the State does not make the delivery of the goods a non-taxable event. If a customer picks up the property in Arkansas in his own conveyance, then the sale is intrastate and tax must be collected and remitted. C. When tangible personal property is sold by a seller engaged in an established business in this State and under the terms of a contract of sale or order the seller delivers by common carrier, U.S. Postal Service or in the seller's own conveyance to a point outside this State for consumption and use, such transactions are not subject to the tax and may be deducted provided proper records are preserved to establish such deductions including mail orders, shipping orders and all data pertinent to the purchase and delivery. D. When a taxable service is performed in Arkansas a taxable event has occurred and the tax must be collected and remitted even though the consumer of the service resides or is located in another State and/or the property upon which the service is performed is shipped to another State. I. Retailer Coupons: Retailer issues a coupon entitling customers to 25 cents off the price of a product. Retailer will not be reimbursed by any third party. The 25 cents is not part of gross receipts or gross proceeds and the tax is due only on the amount paid by the customer for the product not including the coupon. J. Bad Debts: Taxpayers may deduct bad debts from the total amount upon which the tax is calculated. A "bad debt" means any portion of a debt for an amount which a taxpayer has reported as taxable, which the taxpayer legally claims as a bad debt deduction for federal income tax purposes. Bad debts include, but are not limited to, worthless checks, worthless credit card payments and uncollectible credit accounts. Bad debts do not include financing charges and interest, uncollectible amounts on property that remain in the possession of the taxpayer or vendor until the full purchase price is paid, expenses incurred in attempting to collect any debt, debts sold or assigned to third parties for collection and repossessed property. Bad debts incurred for sales made prior to November 9, 1983 shall not be deducted. Bad debts must be deducted within three (3) years of the date of the sale for which the debt was incurred. If a deduction is taken for a bad debt and the taxpayer subsequently collects the debt in whole or in part, the tax on the amount so collected shall be paid and reported on the next return date after the collection. Any deduction taken or refund paid, which is attributed to bad debts, shall not include interest. K. None of the above examples should be construed to limit the definition of "gross receipts" or "gross proceeds".
GR-19. PERSONS REQUIRED TO COLLECT AND REMIT TAX — PAWNBROKERS AND SELLERS OF USED TANGIBLE PERSONAL PROPERTY: Pawnbrokers and sellers of used tangible personal property are sellers of taxable goods and must obtain a permit. All sales made by pawnbrokers or other sellers of used property are taxable sales. (See GR-50 for exemption relative to trade-in property.)
GR-20. PERSONS REQUIRED TO COLLECT AND REMIT TAX — LEASES AND RENTALS: Persons engaged in the established business of leasing or renting articles of tangible personal property to consumers are sellers and must collect and remit the tax upon the gross receipts or gross proceeds derived from the lease or rental of the property. If the Arkansas Gross Receipts Tax or Arkansas Compensating Use Tax was paid at the time the seller originally purchased the property, then the tax does not apply to the subsequent lease or rental of the property.
Example 1: Seller is engaged in an established business of leasing various items of tangible personal property in Arkansas. Seller purchases the property subsequently leased from a vendor located in St. Louis, Missouri. Seller pays Arkansas Compensating Use Tax when the property is brought into Arkansas. No tax is due when seller subsequently leases the property to a consumer.
Example 2: The same facts are present as in Example 1. Seller also purchases repair parts from a supplier located in Arkansas. The repair parts are needed by Seller to keep the property he leases to consumers in proper working order. Seller must pay Arkansas Gross Receipts Tax to his supplier. The supplier must report and remit tax.
GR-21. PERSONS REQUIRED TO COLLECT AND REMIT TAX — SPECIFIC BUSINESSES — CONTRACTORS: Contractors defined by GR-3-L are deemed to be consumers or users of all tangible personal property which they purchase for use in the performance of a contract and should pay the tax at the time of purchase. In some cases, however, a person ordinarily performing services as a contractor acts as a seller of tangible personal property or as a person performing taxable services and must collect the tax from the consumer. A person who performs services as a contractor in connection with the construction, erection or substantial modification of any building or other improvement or structure affixed to real property (including tenant finish work for tenants of the structures) will not collect the tax on such contracting services, However, If the person performs service work involving the maintenance or repair of items and not as a contractor (for example, by performing repair services on an air conditioning unit, whether or not the unit is affixed to real property), then the person must collect the tax from the consumer. Materials purchased for use in construction contracts that become recognizable components of the completed project are taxable at a rate of 3% under Act 386 of 1941, as amended. These materials are exempt from the additional 1% sales and use tax levied by Act 63 of 1983, (First Extraordinary Session) if the following conditions are satisfied: A. Qualifications: Before materials used in construction contracts are exempt the materials and construction contract must meet the following qualifications: 1. The materials must be used in a construction contract. 2. The materials must be used in a construction contract entered into before November 7, 1983. 3. The material must be purchased prior to January 1, 1989. 4. The seller must keep adequate records to identify all materials sold exempt. Records will be adequate where the following information is available. (a) The construction contractor's name and address. (b) The name and address of the party for whom the construction contractor is performing work.
(c) A brief description of the work performed by the construction contractor which indicates the contract is actually a "construction contract" as defined in this regulation. (d) The date of the construction contract which must be prior to November 7, 1983 (e) The contract number where applicable. (f) The location where the construction contractor is to perform the construction contract. 5. The construction contractor shall complete and sign, under oath, the "Affidavit and Certificate of Proof to Entitlement to Exemption from Sales and Use Tax Increase for Certain Contractor's" form which will be provided upon request by the Revenue Division of the Department of Finance and Administration. The construction contractor shall furnish a completed copy of the form to each seller of exempt property for each contract. The contractor shall also mail a copy of each form to:
 Office of Field Audit Administration P.O. Box 1272 Room 112 Little Rock, Arkansas 72203
6. The invoice reflecting the sale of exempt materials shall contain information which will allow an auditor to locate the "Affidavit and Certificate" form, as well as the other records required by this regulation, in the seller's records. This information may consist of a file number or customer number or any identifying mark which will allow reasonable access to the information in the seller's business records. B. Definitions: for the purpose of this regulation the following definitions apply: 1. "Construction Contract" means a contract to construct, manage or supervise the construction, erection, or substantial modification a building or other improvement or structure affixed to real property. The term "construction contract" shall not include the following: (a) A contract to produce tangible personal property. (b) A cost plus contract or any contract where the contractor has the right to pass any additional tax on the principal as a part of the contractor's cost. 2. "Recognizable" means capable of being recognized in the finished product. The capability to recognize the effect of the materials upon the finished structure or improvement is insufficient to establish the materials are exempt. 3."Materials" means tangible personal property used or purchased by contractors. C. Withdrawal from stock or withdrawal for use: Some construction contractors maintain an inventory of materials and pay sales or use tax on "withdrawals from stock" (Ark. Stat. Ann. 84-1902(d)) or "withdrawals for use" (Ark. Stat. Ann. 84-3104(e)). Where a construction contractor claims the exemption, granted by Act 108 of 1983 (First Extraordinary Session) for withdrawals, the construction contractor shall maintain all records required by this regulation including maintaining copies of the contracts for which the exemption is claimed. D. Consumer use tax reports: Some construction contractors report the use tax due on materials purchased from out of state sellers directly to the Revenue Division of the Department of Finance and Administration. When such a construction contractor claims the exemption granted by Act 108 of 1983 (First Extraordinary Session) the construction contractor shall keep all records required by this regulation including maintaining copies of the contracts for which the exemption is claimed.
E. Examples: On November 11, 1983 a construction contractor purchases a hammer and 50 pounds of nails for use in framing an apartment building. The construction contractor furnishes all necessary information required by this regulation to the seller.
The additional one cent tax is due on the price of the hammer. The hammer will not become a recognizable part of the completed structure and therefore is not exempt. The nails are exempt from the additional one cent tax. The nails become part of the frame of the house. The nails cannot be seen after the house is completed, but they remain as a recognizable part of the house. F. Burden of Proof: The burden of proving entitlement to an exemption is the taxpayer. In the case of audit of a seller's business, the burden is on the seller to keep records adequate to prove the validity of the claimed exemptions. In the case of an audit of a construction contractor's business, the burden is on the construction contractor to keep records adequate to prove the validity of the claimed exemptions failure to do so will result in the exemption being disallowed and applicable tax, penalty and interest being assessed on the taxpayer.
GR-22. PERSONS REQUIRES [REQUIRED] TO COLLECT AND REMIT TAX — SPECIFIC BUSINESS — FUNERAL HOMES AND FUNERAL DIRECTORS: A. Funeral homes for funeral directors must collect and pay tax upon the gross receipt or gross proceeds of all sales of tangible personal property sold by them in connection with the services they offer.